CORNISH & COMPANY v. JOHN K. WEST and Others.[1]

January 2, 1901.

Nos. 12,295, 12,296, 12,297, 12,298, 12,299—(136, 137, 138, 139, 140).

### Contract Construed.

A contract for the construction of a creamery, executed by plaintiff as of the first part, and by all but two of the defendant subscribers as of the second part, construed.

### Liability of Subscribers.

Fifteen of the subscribers limited their liability by fixing the amounts of their several subscription's, in all, $1,700. Eleven did not fix these amounts. The stipulated contract price was $3,000. *Held*, that the liability of the eleven last mentioned is several, not joint, and that each is bound to pay one-eleventh of $1,300.

### Enforcement of Lien—Complaint Good.

*Held*, in an action to obtain a judgment and to enforce a lien upon the property, that the complaint stated a cause of action against all of the defendants.

Appeals by plaintiff from orders of the district court for Becker county, Searle, J., sustaining separate demurrers to the complaint. Reversed.

*Cannon & Donnelly*, for appellant.

*Harris Richardson* and *Jeff H. Irish*, for respondents.

[1] Reported in 84 N. W. 750.

COLLINS, J.

This action was brought by plaintiff against the defendants, twenty-seven in number, to recover a joint and several judgment against eleven for the sum of $1,300. It was based upon a written contract signed by all but two of the defendants, namely, the Detroit Light & Land Company and the Detroit Dairy Association; and, in addition to the personal judgment, a lien was demanded upon the real property on which the creamery mentioned and provided for in the contract was built. The agreed price was $3,000, and of this amount $1,700 had been paid, according to the complaint, to which a copy of the contract was attached and made a part.

This contract was in the usual form of such instruments; the plaintiff being the party of the first part, and the defendants, except the Detroit Light & Land Company and Detroit Dairy Association, the parties of the second part; each defendant having been a subscriber thereto. The contract price was made payable in cash upon the completion of the creamery, or in lieu of all cash, at the option of the subscribers, payment might be made by a joint negotiable note or notes for two-thirds of the amount, one due in six months and one-third in one year after the creamery was completed. It was further agreed that, if the subscribers should organize themselves into a legal association, a negotiable note executed by that association would be accepted in lieu of joint obligations for the amount of the deferred payments. It was also stipulated that the plaintiff should build, erect, and equip the creamery as soon as twenty subscribers were obtained to the contract, and that, unless the required number of subscribers was obtained, the contract should be void. It was further provided that plaintiff should make vigorous effort to obtain ten or more additional subscribers to the contract. There was also an agreement between the subscribers themselves. Among other things, they agreed to sign jointly all notes given in settlement of the indebtedness to plaintiff, or, at their option, each might pay the amount of his subscription in cash. This instrument was printed, except as to the amount to be paid for the creamery, the place where it was to be built, and the date of its execution; a

blank form being used, as customary. It was executed in plaintiff's behalf by an agent, and then, following the details of the contract, the blank was divided into two parallel columns, in which signatures were to be placed. These columns, when the contract was considered complete, appeared thus:

| Names of Second Party. | Names of Second Party. |
| --- | --- |
| Cash on completion of factory.<br>John K. West.....................$100<br>Geo. D. Hamilton..................$100<br>Blanding-Norby Co.................$100<br>Casper Wackman....................$100<br>John H. Smith.....................$100<br>I subscribe for stock to the amount<br>of ...........................$100<br>          Wm. J. Bettingen.<br>I subscribe for stock to the amount<br>of ...........................$100<br>          E. F. Harris.<br>Nick Schroder.....................$100<br>Snell Brothers....................$100<br>E. G. Holmes......................$100 | This amount I agree to pay one-half in six months, and one-half in one year after factory is completed.<br><br>John K. West......................$100<br>Geo. D. Hamilton..................$100<br>E. F. Harris......................$100<br>This amount to pay one-half six months after creamery is finished, $50. $50 one year from time creamery is finished. Six per cent. int.<br>          H. R. Johnson.<br>S. G. Griffin.....................$100<br>J. A. Teague......................$100<br>John Rahm.........................$100 |

Turning over, at its end, the sheet or page on which was the foregoing, it appeared thus:

| Names of Second Party. | Names of Second Party. |
| --- | --- |
| A. M. Hoghaug.<br>John Peterson.<br>George Whipple.<br>Erastus Swick.<br>Fred Mix.<br>Frank Wietzke.<br>Wm. Disse.<br>J. F. Olson.<br>William Fisher.<br>Fred Weirand.<br>C. J. Rennacker. | ............................................<br>............................................<br>............................................<br>............................................<br>............................................<br>............................................<br>............................................<br>............................................<br>............................................<br>............................................<br>............................................ |

So that the first or left-hand column upon the back of the sheet or page closely followed, and in fact was a continuation of, the first or left-hand column of the first page; the name A. M. Hoghaug following that of E. G. Holmes. The words "names of second party," wherever they appear as above shown, were printed. The balance of the words and figures was in writing. At this point we call attention to the fact that opposite to the names

of the eleven defendants last mentioned there was nothing to indicate the amount of their several subscriptions, as there was opposite the names of those whose signatures preceded, and it is these defendants against whom a money judgment is demanded.

It stands admitted that the other defendants have placed a practical construction upon their contract, which has been satisfactory to the plaintiff, and has resulted in payment by each of these persons of the amounts set opposite their respective names, —$1,700 in all. The question in the case seems to be as to what amount, if any, was subscribed by the remaining eleven defendants. It is contended by their counsel that, so far as is shown by the complaint, they are not liable in any sum whatever, and, further, that in no event can their liability be held joint, and that at most it is a several liability for $100 each.

It is very clear that, had not a part of the defendants limited, by figures placed opposite their respective names, the amounts of their subscriptions, when signing this contract, it would have been a joint and several obligation on the part of all of the subscribers. Its terms were not at all complicated, and it would have been like any other contract in which parties of the second part agree to pay an entire sum in cash for an article to be furnished by the party of the first part, when it is finished, or, at their option, to execute and deliver their joint negotiable note or notes for a part of the purchase price. The language of such a contract will govern, except in a case of fraudulent representation and concealment. But with the contract as it appears, and as finally assented to, we are of the opinion that the liability of the persons whose names appear upon the first page (all of the subscribers except the eleven before mentioned) was limited, and that they cannot be held jointly for any amount whatever. As to those persons a several liability was created, each to the amount of his subscription, for which each might be sued separately. This view was taken as to a similar instrument in Gibbons v. Bente, 51 Minn. 499, 53 N. W. 756; and manifestly this view was taken by the defendants so subscribing, and by the plaintiff, it being evidenced by the practical construction which was placed upon the instrument when these persons paid the amounts so subscribed. They

cannot complain of this construction of their obligation as found in the contract, nor can the plaintiff question the interpretation, for it has acted upon it. Nor, upon demurrer, can the remaining defendants who failed to limit their liability in any way find fault with this view.

This brings us to the principal question in the case: What are the obligations of the eleven defendants who last subscribed to the contract, and failed to indicate the amounts of their subscriptions, and against whom a joint personal judgment is demanded? The question is not without difficulty, and we are not entirely free from doubt as to the extent of their liability. If there had been no limitations made by the subscribers who upon the face of the instrument appear to have first subscribed, the eleven as well as those who preceded would have been bound in strict accordance with the specified terms, as before stated. There are no precedents to guide us, so far as we know; but taking into consideration the fact that the contract price was $3,000, and that of this $1,700 had been previously subscribed by persons who had limited their liability; that $1,300 remained to be raised; and that it ought not to be seriously contended that the eleven intended to become jointly obligated, when those who preceded them upon the contract had not assumed a joint obligation as to the whole debt,—we conclude that prima facie, at least, the eleven became liable severally, not jointly, each for his proportion of the balance due, namely, $1,300. In other words, the subscription of each, each for himself, was prima facie for one-eleventh part of $1,300. This being our conclusion, it is quite evident that as against these eleven defendants the complaint stated a cause of action. A several judgment can be entered in this action for the amount due from each upon the contract, notwithstanding the demand for a joint and several judgment against the eleven.

It follows that a lien can be enforced as to each of the defendants against whom a several judgment is entered, to the amount of his interest in the creamery and the real property upon which it was located. As to the interests of such of the subscribers as have paid their subscriptions and settled with the plaintiff, no liens can be enforced. Their interests are fully protected by the

settlement, and whatever rights they may have in the property cannot be reached in proceedings against the defaulting defendants. But they were proper parties to the action; for their interests, unless guarded, might be jeopardized in the attempt to enforce liens against the interests of their co-subscribers who had refused to settle, and against whom personal judgments may be entered. They have interests to protect, and consequently they were proper parties to the action. If their rights are not affected, they can disclaim and disavow any interest in the matter. This is also true of the defendant Detroit Light & Land Company and the Detroit Dairy Association. The complaint alleges that both of these parties have, or claim to have, some interest in the property. If so, they are properly made defendants in an action to enforce the lien against the rights of the eleven defendants before mentioned. There were five separate demurrers interposed, and we conclude that, for the reasons stated, each should have been overruled.

The order appealed from is reversed.