EMILIE MEYER, Appellant, v. FRITZ STORTENBECKER et al.,
Appellees.

DEEDS: Validity—Mental Incompetency and Undue Influence—Evidence—Sufficiency. Evidence reviewed, and held to show affirmatively that the grantor of the deed in question was mentally competent to execute the deed, and that no undue influence was employed to secure its execution.

DEEDS: Requisites and Sufficiency—Consideration—Contest between Heirs. Inadequacy of consideration for a deed from a parent to his child is not, of itself, and *on complaint of an heir of the parent*, sufficient to overthrow the deed. Creditors may complain where an heir may not.

DEEDS: Requisites and Sufficiency—Deed (?) or Will (?)—Consideration Payable after Death of Grantor. Instruments in the form of deeds *in praesenti* are not converted into testamentary instruments simply because the substantial · consideration is distinctly made payable *after the death of the grantor*.

DEEDS: Delivery—Delivery of Deed as Carrying Implied Delivery of Attending Instruments. The delivery of a deed may give rise to the clear *implication of delivery* of another instrument which is part of the same transaction.

SALINGER, J., dissents to the application made.

PRINCIPLE APPLIED: A mother executed and *delivered* to her son a deed to a farm. As a part of the same transaction, a contract was executed, by which the son agreed to pay, as part of the consideration for the deed, a named annuity to the mother during her lifetime, and, within a stated time *after the death of the mother*, to pay $500 to the mother's daughter, and $3,875 to each of the mother's three sons other than grantee, —a total of $12,125. The mother died. The daughter claimed that the contract obligation of the grantee was simply an *attempt* by the mother to make a gift to the daughter and said three sons; that said attempt was wholly ineffectual because lacking *delivery* during the lifetime of the mother; that, as a consequence, the $12,125 became a part of the estate of the mother.

*Held*, the *delivery* of the deed carried an *implied delivery* to the daughter and three sons of the grantee's contract obligation to pay them the stated sums after the death of the mother.

CONTRACTS: Requisites and Validity—Delivery—Implied Delivery.
5   The delivery of a contract may be *implied* from the *actual* delivery of other instruments which are part of the same transaction.

CONTRACTS: Parties—Contracts for Benefit of Third Parties.
6   Principle recognized that a contract between two parties for the benefit of *third* parties is valid and enforcible by such third parties, and especially so when the benefits are loaded with no onerous conditions.

*Appeal from Pottawattamie District Court.*—O. B. WHEELER, Judge.

DECEMBER 21, 1917.

REHEARING DENIED SEPTEMBER 30, 1918.

THIS is a suit in equity to set aside a deed from the mother of appellant to her brother, Fritz Stortenbecker; an attack upon a contract made at the time the deed was, and as part of the same transaction, and to have treated as part of the estate of the mother, now deceased, the certain widow's allowance made the mother in the estate of her deceased husband, and of a sum paid her as her distributive share. The controversy involves whether the mother, at the time of the transaction complained of, was mentally competent to convey and contract; whether she was unduly influenced into making deed and contract; whether any valuable consideration passed to her; and whether the entire transaction be not void for being testamentary without having been effectuated by such a will as the statute requires. The petition of the appellant was dismissed, and she appeals.—*Affirmed.*

*H. L. Robertson* and *L. W. Schneider,* for appellant.

*Mayne & Green* and *Tinley, Mitchell & Pryor,* for appellees.

SALINGER, J.—I.   There is a sharp controversy over

where the burden of proof lies, it being the contention of
the appellant that there was such confidential relation be-
tween the mother and the grantee son as
that the burden was cast upon the latter
to negative incompetency, undue influence,
and want of consideration. We need not
decide it, because we are fully convinced
that, if this burden does lie where the ap-
pellant would have it, that it has been fully met. As is
usual in such disputes, the record is one of tremendous
volume, and it would serve no useful purpose to fill the
opinion with even an attempt of dealing with the testimony
in detail. We have given that record the most careful con-
sideration, and find—taking into consideration that this is
a review *de novo,* and not a determination of whether there
is enough evidence to take a point to a jury—that (1) the
claim that the appellee entered into a conspiracy to defraud
the appellant out of her just share in the estate of her
mother is not sustained (we doubt whether, if there were
the same state of facts made apparent in a suit at law, it
would carry that question to a jury) ; (2) it is made ap-
parent that there was no improper or undue influence.

We are in no doubt that, had the trial judge found that
the mother was mentally incompetent to enter into the
transaction complained of, we would have been constrained
to reverse such a finding. There is the rather usual exag-
geration of things that happen in the life of all, and of mat-
ters usual with those who reach old age; an array of testi-
mony that the mother had complained of headaches, had
been sick in bed on some few occasions in all her long, hard-
working life; some stress is laid on the fact that, though
very frugal and thrifty for nearly all her life, that at last,
when she had an annual income of $640, she expended most
of it, and bought some presents for her grandchildren, and
committed other like extravagances. It is pointed out that

1. DEEDS : valid-
ity : mental
incompetency
and undue in-
fluence : evi-
dence : suffi-
ciency.

the price paid for the land which she conveyed to the one
son did not exceed $15,000, even if one allow the grantee as
much of its proceeds as the mother allotted his brothers,
and that the land was fairly worth about $23,000. It is
further pointed out that the grantee received a large gift
by means of the conveyance; that each of the three brothers
was intended to receive $3,875 of the purchase price, while
the plaintiff, the only daughter, was to receive but $500;
and that these brothers were, relatively, both in wealth and
health, better situated than the daughter. The record makes
clear that such differentiation does not in the least speak
against perfect mental balance. The daughter was mar-
ried to a man whom her family intensely disliked, and there
was no disposition to make it possible for this husband to
become enriched by what his wife might receive; she has
lived away from home for many years. While she attempts
some explanation of it, she practically never wrote to either
father or mother. While she makes some explanation of
that, she was not at the funeral of either. It does not ap-
pear that the mother was advised of these explanations. In
his lifetime, she sued her father for wages, and got a judg-
ment against him. After his death, she instituted a con-
test upon his will; charged that he was insane; one trial
went on to a disagreement; and thereafter, a settlement was
made, by which the daughter received $6,500. The will of
the father excluded this daughter. There is evidence that
the mother entertained a fairly strong feeling concerning
this attitude of the daughter to her father.

In addition, there is opinion testimony of medical men,
in answer to hypothetical questions constructed along fa-
miliar lines, in which it is announced, in answer to ques-
tions which fill pages of print, and in the fewest possible
words, that this woman was of unsound mind. A familiar
strain pervades this testimony. It rests, in part, upon what
is not proven, or upon a grossly exaggerated version of the

condition of the person pronounced insane. The conclusion rests, in part, upon matters that can have no logical bearing on mental condition, such as weight, living on a farm, having borne five children in course of a long lifetime. As is also quite usual, the opinions thus given, categorically, are frittered away. By way of illustrations, some of these witnesses say that having headaches and hardening of the arteries induced the witnesses to opine that senile dementia was present; but they admit, finally, that these elements may be, and often are, present without senile dementia, or impairment of the intellect. Time and again, these witnesses make their opinion upon mental condition to depend upon the presence of this or the absence of that, only to say, finally, that this absence and presence are normal, and, in effect, that it furnishes no evidence of mental weakness. We may concede that this opinion testimony is some evidence; but, as said, we are not reviewing the verdict of a jury, but are weighing evidence. And we are of opinion that, though this be evidence, it is not weighty, when all the evidence is considered, giving some consideration to the fact that the trial judge was not persuaded by it. When all is said and done, the great weight of the evidence is that this was the average hard-working, abstemious, clean-living, thrifty, farmer's wife; that she was average in dress, speech, and conduct, and of the mental capacity normally found in those of her station, environment, and opportunities. Against all the opinions that she had less capacity than that, one single fact is outstanding which, to us, seems more controlling than all this strained machinery for making a case of insanity or mental weakness. She was a witness in the will contest of which we have spoken, a little over four years before the transaction in inquiry here. Notwithstanding some claims that she did not speak English, or did not speak it at all well, she testified in that proceeding, and in English. The record exhibits her testimony. No one can read

it with an impartial mind without becoming convinced that she had at least the ordinary capacity of understanding business affairs, or reciprocal duties, and of the consequences of saying one thing rather than another. We are abidingly satisfied with the judgment of the trial court that the deed and contract may not be avoided for want of capacity, nor for undue influence.

### 1-a.

As to want of consideration, this is no contest by creditors. It is an attack upon a transfer made to one son, with whom the mother was and for a long time had been living, who had become something of her staff and

2. DEEDS: requisites and sufficiency: consideration: contest between heirs.

scrip in life, and in which she transferred what she no longer needed, providing by the transfer, too, what, in her judgment, she wished her other children to receive.

II. What has already been said is as well an argument for holding that the deed made from mother to son may not be set aside, and the land treated as belonging to the estate of the mother. It is, however, contended

3. DEEDS: requisites and sufficiency: deed (?) or will (?): consideration payable after death of grantor.

that, at all events, this deed was a mere instrument made with intent to have it take the place of a will; that equity should treat it as being a will, ineffective for want of the execution and attestation required by

statute. The argument for this contention is that the deed disposed of all the property the mother owned, except a reservation of a life estate, commuted for the promise to be paid a stated annual sum, just about sufficient for maintenance; and that the purchase price was to be distributed only after the death of the grantor. The test whether this instrument, though in form a deed, was in truth an ineffective will, is whether present title passed. Of course, a deed is not testamentary merely because a life estate or use for life is reserved. While the beneficial use

is thus postponed, the present title passes.  Any creditors of the grantee could subject this land to the debts of this son as soon as this deed was delivered, although he might not seize immediate possession.  There is a manifest difference, which we think the appellant is overlooking, between obtaining title only after a grantor has died, and not being bound to pay the purchase price until after that eventuality. If the grantor in a deed should elect to make a long-time investment of the purchase price, and take the note of the buyer, payable in fifty years, it would be fairly clear that payment would not be made in the life of the grantor; but that would, of course, have no tendency to prove that the land had been willed, rather than sold.  *Cover v. Stem,* 67 Md. 449 (10 Atl. 231), citing Sheppard's Touchstone, 368, *Hannon v. State,* 9 Gill. (Md.) 440, *Carey v. Dennis,* 13 Md. 1.  Story on Promissory Notes, Section 27, approves in the following words, of a statement in Bacon's Abridgement:

"There must be terms employed to create a *debitum in praesenti,* though the *solvendum* may be *in futuro,* and even after the death of the obligor.  It would seem to be clear that the relation of debtor and creditor must be created and subsist in the lifetime of the parties to the instrument, though the time of payment may be deferred until after the death of one of the parties."

See *Fitzgerald v. English,* 73 Minn. 266 (76 N. W. 27).

In holding that this was a deed, and not a will, we are not unmindful that whether it be a conveyance or an instrument of testamentary character involves intent.  *Crispin v. Winkleman,* 57 Iowa 523; *Conrad v. Douglas,* 59 Minn. 498 (61 N. W. 673).  But we do hold that, taking into consideration the entire transaction and the direct testimony bearing on intention, it must be found that this was a conveyance *in praesenti.*  It follows the deed may not be set aside.

III.  But that does not solve all the problem.  That

the deed may not be set aside because the purchase price was not to be paid until after the death of the mother, does not settle that this appellant may not demand that the purchase price, when paid, shall be treated as though her mother had left a corresponding sum of money, and had died intestate.

**4. DEEDS: delivery: delivery of deed as carrying implied delivery of attending instruments.**

A contract was made between the mother and son at the time when she conveyed to him, and as part of the same transaction. It recites that the consideration of the conveyance is the payment by the grantee, within one year from the death of the grantor, of $500 to the appellant and $3,875 to each of the three brothers other than the grantee,—a total of $12,125; and that these sums are to draw interest at five per cent per annum from the time of the death of the grantor until the same are paid, within said one year.

A conveyance may be *in praesenti* though the purchase price is not to be paid until after the death of the grantor. And the price to be paid for a conveyance which is unquestionably one *in praesenti* may be disposed of by will. Thus we have the question whether the direction in this contract is not merely an ineffective testamentary disposition. On this question, the writer is constrained to differ from the majority. Its views are expressed by Mr. Justice Evans, as follows:

EVANS, J.—I am unable to agree that the contract is ineffective whereby the son Fritz bound himself to pay certain sums of money to the other children of his mother. The opposing view is that those provisions for payment were merely intended gifts on the part of the mother which were not consummated by delivery; or else that these provisions were intended to be testamentary in character only, and were void for want of statutory formality in the execution thereof.

It is to be borne in mind that the contract between the mother and her son was in writing. Two instruments were executed as parts of the same transaction. The first was a warranty deed of the premises, and this deed was executed and delivered and recorded. The other instrument was duly signed both by the mother and by the son, whereby the son undertook to pay, as a part of the consideration for the deed, the sum of $640 per year to his mother during life, and further specific sums to specified persons within one year after her death. If such a contract is not valid and enforcible by the beneficiaries thereof according to its terms, we have been a long time finding it out. Contracts of this general nature have come before us frequently, the validity of which in this respect has never been questioned. See *Heminger v. Carney,* 181 Iowa 42, as illustrative of many.

5. CONTRACTS: requisites and validity: delivery: implied delivery.

The theory of the opposing view is that the case does not differ from one in which the son had paid this sum to the mother, and she had then made a writing making a gift of the money to her children in stated proportions, and directed another to pay over after, and only after, the death of donor; wherefore all that transpired was no more than an attempt to make a gift.

I think the reasoning is faulty at this point, and that it runs counter to certain legal propositions that are well settled under our decisions. The form of delivery necessary to effectuate a gift may be either actual or symbolical, or implied from the circumstances. *Vosburg v. Mallory,* 155 Iowa 165. If it can be said from the circumstances that what was done by the donor was intended as a present delivery, then it will be deemed such. *Farmers' & Traders' Bank v. Haney,* 87 Iowa 101. An implied delivery was found in *Newton and Seeley v. Bealer,* 41 Iowa 334, from circumstances which fall far short of those in the present case. The

same was true in *Trask v. Trask,* 90 Iowa 318, involving real estate.

We have held repeatedly, also, that a contract between two persons for the benefit of a third person is valid as to such beneficiary and enforcible by him; and this is espe-
cially so where the benefit is not burdened with onerous conditions, to be performed by the beneficiary. *White v. Watts,* 118 Iowa 549; *Runkle & Fouse v. Kettering,* 127 Iowa 6; *Getchell & Martin L. & M. Co. v. Peterson & Sampson,* 124 Iowa 599; *Knott v. Dubuque & Sioux City R. Co.,* 84 Iowa 462.

6. CONTRACTS: parties: contracts for benefit of third parties.

To my mind, the slip in the opposed reasoning is indi-cated in the illustration above stated, in that the hypothesis therein stated eliminates the element that is vital to the case. Such element being eliminated, it can properly be said that there was no delivery. But this, in effect, begs the whole question here involved. The hypothetical case is not the same, in a legal sense, as the actual case presented by the record. When the mother entered into the contract with her son Fritz, she had a right to stipulate for the payment of a specified consideration to herself. She had an equal right to stipulate for the payment thereof to someone else. When the son Fritz bound himself to pay these sums to other parties, he became bound thereby to such other par-ties. He was thereby necessarily relieved of any implied ob-ligation to pay the same to his mother. If the mother had received the purchase money from Fritz into her possession, as stated in the hypothesis, or if she had received and had in her possession a note therefor or a chose of action in any other form payable to herself, then I concede that she could not make a gift of the same without delivery thereof. The execution of the deed by the mother and the promise to pay by Fritz were parts of the same transaction. The very fact that the deed was confessedly delivered, carries the implica-

tion that the other instruments were also mutually delivered. How could the deed become effective, if the undertaking which represented the consideration therefor was not effective? The opposing theory not only finds the one instrument effective and the other ineffective, but it' holds Fritz to a liability other than that provided in his contract, and this without any default or beach on his part.

SALINGER, J.—The writer finds himself unable to agree to the foregoing. What was done? The mother deeded her land to her son Fritz. As a part of the transaction, she and Fritz made a writing as to what should be done about the payment of the purchase price. The fundamental error of the majority is that it gives undue effect to the fact that the deed and this writing are, in a sense, part of the same transaction. They were, in the sense that both dealt with the conveying land by one party to the other; and that both writings were made about the same time. But the two were not part of a sale, in such sense as that the seller was never entitled to the purchase price. The record does not disclose what oral negotiations were had; and we are limited to what the two writings disclose. Now, if the writing that attempts to dispose of the price was begun in one minute after the deed was delivered, and signed within five minutes after its preparation was begun, during those minutes the law made the seller the owner of the purchase price. If the seller had orally agreed, when she delivered her deed, that the price should be made a gift to a third person, and agreed to sign a writing to that effect, a refusal to sign such writing after it was prepared would have left her the owner of the purchase price. The buyer could not enforce the oral agreement. While he was obligated to pay the price, he, of course, had parted with nothing to get a direction that he pay it to a third person. To him, it made no difference to whom he paid, unless someone could complain if payment was not made to the complainer. The other

children could not complain that Fritz did not pay them according to the repudiated direction, because the director gained nothing for making the direction, and the children lost nothing in order to get the direction made. Up to the point, at any rate, when the writing was signed, the mother owned the purchase price—no creditor of the children could seize it, because the mother had promised that it should become a gift to these children. This works that, at least up to the time at which the seller signed the writing that directed as to who should receive the price, the seller could revoke her oral statement that she would, in writing, direct who should be paid the price. Up to then, if she had in any sense parted with said price, she had not done so irrevocably. Until she so parted with it, it was her property,—she could demand it for herself, or will or give it away. As seen, she made no enforcible disposal of that property, prior to her signing this writing. As I hope to demonstrate, this status was not changed by her signing same.

Some phases of the writing constitute a binding contract between her and her son. He could not be made to pay more than the sum named, nor to pay it before the time fixed for payment. Another phase told him to whom to pay. As said, the son paid nothing to induce the selection of the ones to whom payment should be made. In the eye of the law, it was a matter of entire indifference to him to whom he paid. The mother gained nothing by naming who should get her money which would affect her as by a consideration. The ones selected to be paid gave nothing for being selected to be paid, and lost nothing by being chosen. This proves that the rule of contracts for the benefit of a third person, upon which the majority places reliance, has no application. As to the children other than Fritz, no contract was made. Had the mother changed her mind, and selected others, these children could not have

compelled an adherence to the original direction. This proves that the direction, too, was not irrevocable. The consideration from the buyer was that he should pay, not to whom he should pay; and there never was a "contract" to turn over the property of the seller to the other children, unless a direction to do so, without consideration, constitutes a contract.

What has been said demonstrates as well that the direction was one to make a gift. Some gifts must be delivered presently, and are otherwise ineffectual, no matter how clear is the intention to give. This is the rule as to the gift of a chattel. What was the gift which the son was directed to effectuate? Why, a gift of the agreed purchase price. Surely, that was not delivered presently. It was agreed it should not be delivered at the time the writings were made, and was not delivered, if at all, until after the death of the donor. Not even the paper that directed the making of the gift was ever delivered to the donees. True, it was delivered to Fritz; but that does not constitute a delivery of the paper for the benefit of the donee, because the rights of Fritz made it proper to deliver the paper to him for his own use and benefit. It fixed what he was bound to pay, and gave him time wherein to pay. Be that as it may, the *gift,* the money, was not then delivered to anyone. Certainly not to the donees. As certainly not to Fritz. Delivering him a paper which obliged him at a later time to pay money to donee was surely not a delivery of that money to the one who was to so pay it out. He had it all the time. The mother never delivered it to him. She merely directed that money which the buyer had not yet parted with should later be given to her other children. That is all there is to making the gift effective by present delivery, and this did not constitute a presently completed gift of a chattel.

In *Chevallier v. Wilson,* 1 Tex. 161, approved and fol-

lowed by *Dickerschied v. Exchange Bank,* 28 W. Va. 340, *Walker v. Crews,* 73 Ala. 412, *Pennington v. Gittings,* 2 G. & J. (Md.) 208, and *Gartside v. Pahlman,* 45 Mo. App. 160,— a gift *inter vivos* being spoken to,—it was said:

"The test of delivery—of the consummation of a parol gift of a chattel—is the change of property—the immediate right to entire dominion over the subject of the gift— a perfect title, which is as good against the donor as anyone else. * * * The change of property must, in all cases, be complete at the instant of the gift. The right which had been in the donor must *eo instanti* of the gift be vested in the donee."

I cannot see how it can be said that such change took place here.

For the proposition that parental declarations must not be mistaken for a complete gift, see *Williamson v. Williamson,* 4 Iowa 279, 281; *Wilson v. Wilson,* 99 Iowa 688; *Shellhammer v. Asbaugh,* 83 Pa. St. 24.

It is vital that future control over the property remain in the donor until his death. *Stark v. Kelley,* 132 Ky. 376 (113 S. W. 498). The gift must be consummated during life. *In re Estate of Elliott,* 159 Iowa 107; *Foxworthy v. Adams,* 136 Ky. 403 (124 S. W. 381).

Now, though there was no present delivery, yet, if one direct that a gift be made at a fixed future date, and it is then delivered, title will, for some purposes, relate back to the time at which the direction was given. It may further be conceded that, where the direction fixes a reasonably proximate time, the gift may be made complete by delivery at that time, even though it happens that the donor had died before that time. But what we have to deal with here is an undelivered gift, which is to be delivered only after the death of the donor,—in other words, a testamentary gift provided for by a writing which is not a testament. I am not able to distinguish between a will which bequeathes a

sum in the hands of one son to other children, and a written direction to the son to pay that sum over to those children after the parent dies.

The following illustrate what is a testamentary gift, made in a writing ineffectual as a testament. In the case of *Fitzgerald v. English,* 73 Minn. 266 (76 N. W. 27), it was a letter acknowledging that the writer was indebted to the addressee, and directing him to put the confessed amount in "as your claim against my estate." That there was such a gift was held as to a case where a husband deposited money and took the certificate jointly in the name of himself and wife, and stated to the banker he did so to enable the wife to draw money on his death, and was informed by the banker the latter would pay; and the husband gave the certificate to the wife to keep (*In re Brown's Estate,* 113 Iowa 351); as to a case where decedent transferred money in bank to defendant, with instructions as to persons he should give it to in case of her death, he to have anything remaining after her instructions were carried out (*Knight v. Tripp,* 121 Cal. 674 [54 Pac. 267]); to where an instrument directed a banker of grantor to hold certain bonds for the benefit of his wife during her lifetime, and to pay her the interest on these bonds, and a reversion of the bonds to his heirs upon her death, and the instrument further declared that "the assignment is to take effect at my death, I controlling them in the meanwhile" (*Comer v. Comer,* 120 Ill. 420 [11 N. E. 848]); to where there was a verbal arrangement which was intended to take effect after death (*Starks'* case, 132 Ky. 376 [113 S. W. 498]); to a letter directing conveyance on death of the writer (*Conrad v. Douglas,* 59 Minn. 498 [61 N. W. 673]); to where an instrument delivered stated, "At my death my estate or my executor pay to J. A. Cover $3,000" (*Cover v. Stem,* 67 Md. 449 [10 Atl. 231]); to where, on the back of a promissory note, payable on demand, there was written an unsigned memoran-

dum to the effect that, if the note was not paid in full before the payee's death, the maker should expend the amount due on the note for payee's funeral expenses and for a monument, and for caring for the lot in which he was buried (*Moore v. Weston,* 13 N. D. 574 [102 N. W. 163]).

In *McCourt v. Peppard,* 126 Wis. 326 (105 N. W. 809), the maker of a note gave it as evidence that he agreed to repay certain expenditures which the payee agreed to make after the death of the maker; and it was held the transaction could be made operative by a will alone, because it is found to amount to a direction that the payee shall, after the death of the maker, be paid the sums needed to make the agreed expenditures out of the estate of the maker. In *Crispin v. Winkleman,* 57 Iowa 523, 526, a sick son placed property in the hands of his father, on agreement that the father should use so much of the property as was necessary in paying the debts of decedent, the expenses of his last sickness and of his funeral, and the balance, if any, he should use in the support of the decedent's children. With this understanding, possession was taken, and defendant undertook to carry out the wishes of his son; and he appears, in all he did, to have acted in good faith. We hold that the agreement relied upon was of no force, so far as it was designed to be operative after the death of decedent, and gave the defendant no right to or interest in the property, as against the administratrix appointed.

In my opinion, the citations by the majority and some applications of them are irrelevant upon the vital point of difference.

I will assume that *White v. Watts,* 118 Iowa 549, *Runkle & Fouse v. Kettering,* 127 Iowa 6, *Getchell & Martin L. & M. Co. v. Peterson & Sampson,* 124 Iowa 599, and *Knott v. Dubuque & Sioux City R. Co.,* 84 Iowa 462, do hold that a contract between two persons for the benefit of a third person is valid as to such beneficiary and enforcible by him, and

that this is especially so where the benefit is not burdened with onerous conditions, to be performed by the beneficiary. The effect of *Runkle & Fouse v. Kettering*, 127 Iowa 6, is that a promisor who, upon consideration, agrees to pay the debt of another, due to a third person, is holden, and may not defend with the statute of frauds. *Getchell & Martin L. & M. Co. v. Peterson & Sampson*, 124 Iowa 559, holds that, where it is the purpose of a building contractor's bond, not only to secure the owner of the building, but subcontractors and materialmen also, the latter may maintain an action in their own names against the sureties for material furnished, although they are not especially named in the bond and no consideration passes directly from them to the sureties. The effect of *Knott v. Dubuque & S. C. R. Co.*, 84 Iowa 462, is that a joint action may be maintained against a wrongdoer and the party who has assumed his debts and liabilities.

I am unable to see how this controversy is affected by the rule that, where two contract for the benefit of a third, the latter may enforce the contract. Upon this, something has already been said. This rule deals with nothing but cases wherein the third person could enforce the contract, were it made directly with himself. If he have nothing but an uncompleted gift of a chattel, he could not compel its completion, and he is not helped because the donor dealt with another in initiating an uncompleted gift. On the other hand, if the gift be completed, the donee has no mere contract,—has no occasion to sue the donor at all,—and hence has no use for the rule that one for whose benefit a contract is made may enforce the same.

In *Heminger v. Carney*, 181 Iowa 42, there is no question involving testamentary papers or making contracts effective on death. It is a naked holding that, in an action by parents against children to set aside a contract and a deed which provides for the parents' support during their

lives, and to set it aside on grounds of undue influence and breaches of conditions, the evidence does not warrant the relief prayed. The very fact that the living parents are suing, disposes of any possible relevancy to a question whether a paper made to take effect after the death of the maker is enforcible.

*Dettmer v. Behrens,* 106 Iowa 585, holds that the delivery of a deed after death to a purchaser in possession, and by one with whom the grantor has deposited it with directions to make such delivery upon payment of the balance of the purchase price, is, on payment of the price, an effectuating of the deed, and makes delivery relate back to the first delivery. It will be noted that here there was no delivery to take effect after death, but a delivery to be made upon conditions arranged for in the lifetime, and that all that death has to do with it is that it happened before payment was made.

All held by *White v. Watts,* 118 Iowa 549, is that an effective symbolic delivery of land can be made by depositing deed with a third person, to be delivered to grantee upon death of grantor, and that, being so delivered, the delivery is perfect, though it remained within the physical power of grantor to regain possession of the deed, and he retained the mental power to alter his intention, especially where no duty is imposed on the grantee; and that, in such cases, acceptance of the deed is presumed. The other citations in the *White* group are to the same general effect, or less. In various ways, they apply the rule that, a deed being itself a symbol, taking the place of the delivery of land, it is not vital that the paper be manually delivered, and that an intent to convey is the essential thing. Innumerable cases rule that, where the question is the delivery of a deed, it is solved by ascertaining the intent to be gathered in each case from all its circumstances. On the other hand, "a delivery of a chattel in the instance of a gift is a transfer of

possession, either by actual tradition,—from hand to hand,—
or by an expression of the donor's willingness that the donee
should take the chattel, when it is present and in a situa-
tion to be taken by either party." Thornton on Gifts, Sec-
tion 129. And "mere intention, however clear, or however
emphatically and publicly expressed, can never take the
place of a delivery, either constructive or actual. Intention
to give is essential to the validity of every gift; but it is
only one of the requisites to vest the title to the thing given
in the donee." Idem, Section 133. And "in all gifts, a de-
livery of the thing given is essential to their validity; for,
although every other step be taken that is essential to the
validity of a gift, if there is no delivery the gift must fail.
Intention cannot supply it; words cannot supply it; actions
cannot supply it; it is an indispensable requisite, without
which the gift fails, regardless of the consequences." Idem,
Section 131. *Furenes v. Eide,* 109 Iowa 511, at 513. In
*Trenholm v. Morgan,* 28 S. C. 268, speaking of a gift *mortis
causa,* which all agree must have the same delivery as one
*inter vivos,* it is said:

"It is apparent that the infallible test, which must dis-
tinguish it from a testamentary gift, is delivery; change of
dominion *in praesenti."*

*Vosburg v. Mallory,* 155 Iowa 165, does deal with the
delivery of a chattel, and has some language to the effect
that the form of delivery necessary to effectuate a gift may
be either actual or symbolical, or implied from the circum-
stances. What is controlling, and makes the case inappli-
cable, is that it rightly decides there was both symbolical
delivery and actual and completed transfer of notes once
owned by the donor and original payee. It is to the facts
of the *Vosburg* case that we spoke in saying that:

"A gift *inter vivos* takes place by mutual consent of the
giver who divests himself of the thing given in order to
transmit the title to the donee gratuitously, and the donee

who accepts and acquires the legal title to it. It operates, if at all, in the donor's lifetime, immediately and irrevocably. It is a gift executed; and no further act of the parties and no contingency is needed to give it effect. * * * By a gift *inter vivos,* completed by delivery, the property vests immediately and irrevocably in the donee, and the donor has no more right or control over it than any other person. * * * Delivery is essential to either form of gift, but such delivery may be to a third person for the donee." Then comes the announcement of the detached general proposition that "there may be a constructive delivery in many cases where actual manual tradition cannot be made. * * * But in every case of gift there must be either an actual or symbolical delivery." For this is cited *Waite v. Grubbe, Packard v. Dunsmore* and *Stevens v. Stewart.*

In *Waite v. Grubbe,* 43 Ore. 406 (73 Pac. 206), a father had buried sums of money in various places about his estate, and, being ill, and barely able to walk, took his daughter to the whereabouts of the money, and told her definitely the several places where it was concealed. He added, "I give this money to you. It is yours. But if I should get well, and want some of it, would you let me have it?" She answered that, if he got well, he could have it all. He then cautioned her not to let anyone else know where it was, and advised her to leave it there, until the place was rented or she needed it. It was held that this showed unmistakably a present gift and a sufficient delivery.

*Stevens & Walker v. Stewart,* 3 Cal. 140, holds that a symbolical delivery of an order for goods is considered as a delivery of the goods themselves only where they are not susceptible of an immediate delivery, and an actual delivery can presently follow.

*Packard v. Dunsmore,* 65 Mass. 282, decides that delivery of a key of a building in which personal property is stored by the vendor to the vendee, with intent to surrender

possession of the property, is a sufficient delivery as against subsequent attaching creditors of the vendor.

Whosoever sees anything relevant in these, overlooks that the deed is itself but a symbol of a transfer of land, takes the place of an actual delivery of a commodity, of land which is not deliverable by manual tradition, as a chattel is, and that, therefore, the intent with which the symbol is dealt with is controlling; overlooks, also, that intent does not effectuate the delivery of a chattel, and that the completion of delivery cannot be effected by relation back, if there be no delivery at the time, and not more than a direction, other than in a duly made will, that the thing shall be given after the donor has died; and overlooks that the purchase price belonged to the seller until she delivered it to another, and that her direction was not enforcible as a contract, because there was no consideration for such direction.

I would modify as to the writing that deals with the price, and affirm as to the deed. Upon the last, all the judges agree. As to the first, six of the judges favor affirmance also. Wherefore, the decree appealed from stands. —*Affirmed.*

GAYNOR, C. J., LADD, WEAVER, EVANS, PRESTON, and STEVENS, JJ., concur. SALINGER, J., dissents in part.