ELLA YOUNG, Appellee, v. JACOB BIERSCHENK et al., Appellants; LIVING SPRINGS LAND COMPANY et al., Appellees.

**CONTRACTS:** Construction—Joint and Several Obligation. A written 1 contract signed by stockholders, and providing that, when the unpaid liabilities of the corporation are determined, "*each of the undersigned shall pay an equal share with each other in the payment of said liabilities,*" does not constitute a *joint and several* obligation to pay in full each unpaid claim against the corporation.

**CONTRACTS:** Construction—Parol Explanation. A clear, definite, and 2 unambiguous written contract must stand on its own terms, without parol explanation.

Headnote 1: 14 C. J. p. 971. Headnote 2: 22 C. J. p. 1177.

*Appeal from Benton District Court.—JAMES W. WILLETT,*
Judge.

JANUARY 20, 1925.

SUIT on promissory notes given by a corporation. Recovery is sought against individual defendants on a contract which it is claimed created a liability to the plaintiff. The trial court directed a verdict in behalf of the plaintiff, and two of the in- dividual defendants appeal.—*Reversed.*

*Kirkland & White,* for appellant Bierschenk.

*Hugh Mossman* and *Pickett, Swisher & Farwell,* for appellant Ball.

*Tobin, Tobin & Tobin* and *Nichols, Nichols & St. Clair,* for appellee Young.

FAVILLE, C. J.—I. The Living Springs Land Company was a corporation organized under the laws of this state, and engaged in the purchase and sale of real estate. The individual defend-

1. CONTRACTS: construction: joint and several obligation. ants are the officers and directors of said corporation. In 1916, appellee loaned to the said corporation the sum of $8,000, for which she took the note of said corporation, indorsed by certain individual stockholders. In 1917, she loaned said corporation the further sum of $1,000, and took a similar note therefor. No defense is interposed in behalf of the corporation. The sole question presented by this appeal is whether the individual appellants, Bierschenk and Ball, are liable for the amount due on said notes to appellee. Said appellants did not sign said notes, either as maker, surety, or indorser. Appellee's contention is that appellants are liable for the amount due on the notes, because of a contract entered into between appellants and other stockholders in said corporation. Appellee was not a party to said contract.

It appears from the record that, in the year 1918, the corporation became financially involved, and a meeting of the stockholders and directors was held in March, 1919. At that time, the corporation was owing a large amount of money, and certain

of its notes had been indorsed by different stockholders of the corporation. The notes of appellee were so indorsed by three of said stockholders, not including appellants herein; while each of appellants had indorsed other obligations of the corporation. It appears that, at the meeting referred to, a statement of the debts of the corporation was made out on a slip of paper, showing an aggregate of nearly $39,000 of indebtedness; and said statement showed that the assets of the company at that time aggregated about $31,000. It appears that the indebtedness of the corporation to appellee was listed among the liabilities that were so shown at that time. At this meeting, the various stockholders discussed the question of making provision for the payment of the debts of the corporation, but no definite plan was then agreed upon. Thereafter, the appellant Bierschenk consulted an attorney in regard to the indebtedness of the corporation on which he was liable as indorser or surety. An arrangement was entered into, by which one of the stockholders, one Lorenz, agreed in writing to pay $18,850 of the indebtedness of the corporation; and certain other stipulations were entered into, respecting the adjustment of some of the outstanding indebtedness between the stockholders of the corporation and Lorenz, he assuming and agreeing to pay certain notes of the corporation upon which appellant Bierschenk was the sole indorser. This relieved Bierschenk of a portion of his liability.

About April 1, 1919, another meeting of the stockholders of the corporation was held, at which the indebtedness of the corporation was again discussed. It was apparent that the liability of the individual stockholders for the debts of the corporation which they had assumed was not equal in amount. As a result of this meeting and conference, the parties entered into a written contract, which is as follows:

"Vinton, Iowa. April 1, 1919. It is hereby agreed among the undersigned, who are the equitable owners of all of the assets of the Living Springs Land Company and who in different amounts are liable for the debts of the Living Springs Land Company, as is evidenced by certain promissory notes that are in different banks of Vinton and held by different individuals as follows:

"First. It is agreed that all of the equities and assets of

the said Living Springs Land Company shall be converted into cash at the earliest opportunity for the fair market value thereof and all of the returns therefrom applied and used in paying the debts of the company and of the individuals, who signed notes for the company.

"Second. Whenever it is determined what the balance of the liabilities are, it is agreed that each of the undersigned shall pay an equal share with each other in the payment of said liabilities.

"Third. In the event it becomes necessary to raise some money for the purpose of protecting the Minnesota farm or to pay taxes or interest, so as to save the equities in these properties, they agree to furnish their equal share of said money.

"Fourth. It is agreed upon the part of William Miller, who signs this contract, that he will forthwith use his energy and his experience as a real estate salesman to sell these properties making up the assets of the corporation to the end that all of the returns therefrom be used at as early a day as possible for the paying off or the cutting down of the liabilities of the corporation. He shall receive no compensation whatever for his services, but when he is at expense for the Living Springs Land Company alone in the way of railroad or hotel expenses, it shall be paid out of the proceeds from the property, all items of settlement hereunder to be made at Vinton, Iowa.

"Fifth. It is agreed that Albert Houlihan and Will Gilchrist shall act as trustees for the undersigned and money shall be paid to them and accounting made by them to the undersigned, so that the rights of all of the parties are equal when the business is done, said trustees like the agent to act without compensation.

"This contract is not binding until each and all of the following persons sign the same, to wit: William Miller, Charles Elliott, Jacob Bierschenk, J. H. Ball, W. D. Leverich, A. C. Houlihan and R. H. Allen."

Thereafter, the stockholders proceeded to act under said contract. The property of the corporation was disposed of, and the proceeds therefrom used in the payment of various debts of the corporation. Appellee seeks to recover from appellants on the theory that the contract was made for her benefit, and

that appellants, by executing the same, became personally liable to her for the amount of the indebtedness of the said corporation to her on the said promissory notes.

It is the rule in this state that a contract between two persons, executed for the benefit of a third person, based upon sufficient consideration, may be enforced by the third person for whose benefit it was made. We do not, however, pass upon the question as to whether or not the contract in question was made for the benefit of appellee, or if so made, whether appellee's remedy is at law or in equity. A ruling as to that question is expressly reserved. We merely assume that she might have such right, in this action, for the purpose of a discussion of other questions involved in the case.

Appellee contends that the contract was an obligation on the part of the signers thereto, by which they bound themselves, jointly and severally, to pay the indebtedness of the corporation, including the indebtedness of appellee, and that, under said contract, appellee has the right to recover the amount of the said indebtedness from the individual signers of said contract.

Evidence was introduced, upon the trial of the case, relative to the conversations and understanding between the several parties at the time the contract was executed. There was also evidence to the effect that the indorsers of the notes of appellee wrote her, after the execution of this contract, to the effect that her indebtedness would be paid. It affirmatively appears, however, that appellants made no such statement to appellee, nor did they have any knowledge that the indorsers on said notes had made any such statement.

2. CONTRACTS: construction: parol explanation.

It is true, as a general rule, that parol evidence is admissible to show the circumstances under which parties enter into a written contract; but it is equally true that, where the contract is plain, clear, and unambiguous in its terms, it speaks for itself, and its force and effect are to be determined from the instrument itself. Our first inquiry, then, is as to whether or not the instrument in question is plain, clear, and explicit, or whether it is ambiguous and uncertain.

On the face of it, the contract was one executed by the

"equitable owners of all the assets of the Living Springs Land Company." The contract recites that:

"Said parties are liable for the debts of the Living Springs Land Company in different amounts as is evidenced by said promissory notes that are in different banks of Vinton and held by different individuals."

What did the parties to this contract bind themselves to do? It is first agreed that all of the equities and assets of the corporation are to be converted into cash, and the proceeds are to be used in paying the debts of the corporation and of the individuals who signed notes for the company. Then it is agreed that:

"Whenever it is determined what the balance of the liabilities are it is agreed that each of the undersigned shall pay an equal share with each other in the payment of said liability."

What is the proper construction to be placed upon this language? Did each party thereto bind himself to pay to the creditors of the company any and all of the debts of the corporation that had not been paid out of the proceeds of the corporate property?

Assuming, for the sake of the argument only, that the contract was made for the benefit of appellee, as a creditor of the corporation, if the contract binds the parties thereto jointly and severally, then these appellants would be liable to appellee, under the terms and provisions of the contract.

Adjudicated cases are of little value in such a situation, because no two contracts that are subject to construction by the courts are identical in their terms. The general rules of law pertaining to the interpretation of contracts of this character are, however, well established. We are to gather from the language of the contract and the situation of the parties their obvious purpose and intent, as expressed in the language used. When we construe this contract as a whole, it seems to us that it is plain, clear, and unambiguous. Its provisions are definitely expressed, and no inconsistency exists as to its terms. The parties thereto were attempting to effectuate a scheme among themselves whereby they would bind themselves to make contribution to each other to such an extent as would make the several parties share equally between themselves in the debts of the

corporation in which they were mutually interested. The parties to this contract, or some of them at least, were personally obligated upon the debts of the corporation; but the amounts for which they were so obligated varied greatly. The plan and purpose of this contract were obviously to bring about a contribution between the several parties thereto, so that they should share equally among themselves in the amount of the liabilities of the corporation for which the individual signers of the contract had bound themselves.

The contract was signed by seven parties. The clause in question is an agreement between the parties that the balance of the liabilities of the corporation, after exhausting the corporate property, should be paid in equal amounts by the several parties to the contract. The whole plan and purpose were to effectuate equality of liability among themselves for the corporate debts. To hold that this contract is a joint and several contract, binding each of the signers thereto to pay to appellee the full amount of her claim, would be, we think, to do violence to the terms and provisions of the contract itself, and would be contrary to its express purpose and intent.

As previously stated, adjudicated cases involving the construction of contracts are of little value, except for illustrative purposes, showing how contracts of a somewhat similar character, and resembling the contract in question in some respects, have been construed by the courts. For this purpose, and this only, see *McArthur v. Board*, 119 Iowa 562; *Taylor v. Coon*, 79 *Wis.* 76 (48 N. W. 123); *Cornish & Co. v. West*, 82 Minn. 107 (84 N. W. 750); *Dornan v. Pennypacker's Exr.*, 1 Pen. (Del.) 457 (41 Atl. 1105); *Frost v. Williams*, 2 S. D. 457 (50 N. W. 964); *Landwerlen v. Wheeler*, 106 Ind. 523 (5 N. E. 888); *Western Wheel Scraper Co. v. Locklin*, 100 Mich. 339 (58 N. W. 1117).

The contract, in any event, did not give to appellee the right to recover the full amount of her claim from the individual appellants. The court erred in directing a verdict for appellee.

II. Appellee alleges that the parties to said contract took over unto themselves and converted to their use and benefit all of the assets and property of the corporation, under their promise to pay the creditors of said corporation, one of whom was

appellee. Appellee now contends that, under this allegation of the petition, and the evidence in the case, she is entitled to recover from appellants because of the provisions of Section 1621, Code of 1897 (Section 8378, Code of 1924), which is as follows:

"The diversion of the funds of the corporation to other objects than those mentioned in its articles and in the notice published, if any person be injured thereby, and the payment of dividends which leaves insufficient funds to meet the liabilities thereof, shall be such fraud as will subject those guilty thereof to the penalties of the preceding section; and such dividends, or their equivalent, in the hands of stockholders, shall be subject to such liabilities. If the directors or other officers or agents of any corporation shall declare and pay any dividend when such corporation is known by them to be insolvent, or any dividend the payment of which would render it insolvent, or which would diminish the amount of its capital stock, all directors, officers, or agents knowingly consenting thereto shall be jointly and severally liable for all the debts of such corporation then existing, but dividends made in good faith before knowledge of the occurring of losses shall not come within the provisions of this section."

This section has no application to the facts pleaded or proved in this case. There was no conversion of the property of the corporation by appellants, as alleged in the petition, nor does the quoted section apply to such a state of facts as is disclosed in this record. It has to do with the "diversion" of the funds of a corporation to other objects than those mentioned in its articles. In the case at bar, the evidence shows that trustees were appointed, who took charge of the property of the corporation, and applied the proceeds wholly upon the payment of corporate debts. Section 1621 has no application to such a situation. Appellants did not "divert" the property of the corporation, as alleged in the petition, nor did they in any manner handle the same in such a way as to render them liable to appellee, as a creditor of the corporation.

Other errors assigned, particularly upon the rulings on evidence, require no consideration.

The trial court erred in sustaining appellee's motion for

a directed verdict in her behalf, and the judgment predicated thereon must be, and the same is,—*Reversed.*

Evans, Arthur, and Albert, JJ., concur.