IOWA HOME MUTUAL CASUALTY COMPANY, appellant, v. FARMERS MUTUAL HAIL INSURANCE COMPANY; LORETTA A. BRUCH, guardian for Mary A. and David Bruch, and as administratrix of estate of M. L. Bruch, appellees.

No. 48805.

(Reported in 73 N.W.2d 22)

November 15, 1955.

Loth & Melton, of Fort Dodge, for appellant.

Linnan & Lynch, of Algona, for Farmers Mutual Hail Insurance Company, appellee.

Senneff & Buck, of Britt, and John Senneff, of Mason City, for other appellees.

Smith, J.—This is a proceeding brought under our Declaratory Judgments rule 261, R. C. P. The case was decided by the trial court upon the pleadings. It is our task to determine it upon the pleaded factual situation as it stood when judgment was rendered.

Prior to August 19, 1952, defendant Farmers Mutual Hail Insurance Company issued its standard automobile policy to one John Beiser, insuring him and *anyone driving his car with his consent* against liability for damages for death or personal injury up to $50,000 for one person or $100,000 for one accident.

On or about the named date his car, driven with his knowledge and consent by his son, James J. Beiser, collided with a car driven by M. L. Bruch, killing both drivers and injuring other occupants of the Bruch car. As a result, damage suits by the administratrix of the M. L. Bruch estate and the guardian of the

injured members of his family (all made defendants here) are now pending against the estate of James J. Beiser.

James J. Beiser was himself, at the time of the accident, carrying a "non-owner" policy in plaintiff-company, insuring him during *his use of an automobile not owned by him,* against liability for damages for death or personal injury up to $5000 for any one person or $10,000 for any one accident.

Plaintiff in this proceeding contends James J. Beiser was within the definition of "insured" under each policy and that both companies must contribute proportionately to the payment of any judgments rendered against his estate by reason of the August 19th collision with the Bruch car since each policy had a provision requiring such contribution, applicable "if the insured has other insurance against a loss covered by this policy."

Otherwise stated, plaintiff contends defendant's policy (issued to John Beiser) became "other insurance", available to James, and that plaintiff, under its subrogation clause, became subrogated to his right to enforce contribution between defendant company and his own insurer (plaintiff) as to any liability established against him or his personal representative for damages growing out of the Bruch collision.

Defendant company pleads that before the accident it had modified its policy by a rider (Exhibit 2, referred to as a "Driver Exclusion Endorsement") excluding all coverage while the car was being operated by James J. Beiser. It pleads the rider was signed by and delivered to John Beiser, the insured, to be attached to the policy.

Said defendant also answers that since the liability, if any, to the Bruchs would be due to James' negligence, his estate would be primarily liable and his insurer primarily liable to its policy limits; also that the petition shows no suits by the Bruchs are pending against John Beiser; that defendant's policy issued to him was entirely a matter of contract between him and defendant company and that the petition fails to show any privity or interest such as to entitle plaintiff to the declaratory judgment prayed for.

Plaintiff replied, denying the "Driver Exclusion Endorsement" rider (Exhibit 2) ever became a part of defendant's said

policy, alleging there was no consideration for its addition or creation; that neither James J. Beiser nor his administrator ever assented to it; that John Beiser signed it less than five days before the accident, through mistake and induced by fraud; that it was never delivered to him or attached to his policy; and that John Beiser, "within a reasonable time after learning the truth" (about said rider) "and defendant's claim under it, * * * notified defendant in writing that he rescinded, repudiated and canceled" same.

Defendant company's answer is in four divisions as is the reply thereto. We have some difficulty in condensing the various contentions urged by able attorneys on each side but appreciate their efforts to simplify and shorten the record for us, omitting unessential details. The complex situation created by policies issued to separate individuals but with interlocking provisions seems not to have been presented many times in court annals. Exact precedents are few and we must reason largely from principle and such analogies as may be pertinent. Furthermore the field of declaratory law is new and its bounds are not definitely marked.

The Bruch defendants filed motion to dismiss as to them, asserting their right to look to both John Beiser and his son's estate ("even if they were joint tort-feasors which they were not") and disclaiming interest in any controversy over the relative rights of the two insurance companies. The court sustained the motion and plaintiff has appealed from that decision.

After defendant company answered and plaintiff filed reply as above described, defendant company moved to strike the vital allegations of the reply. The court sustained the motion. Plaintiff stood on its exception to the ruling and when the case was reached for trial judgment was entered against plaintiff, the judgment entry reciting that no actual issue of fact remained to support this action.

Plaintiff appealed also from that ruling and both appeals are now before us.

I. We consider first the appeal as to defendant Farmers Mutual Hail Insurance Company. Plaintiff's claim that defendant company must contribute, proportionately with plaintiff to the payment of any judgments that may be rendered

against the James J. Beiser estate growing out of the accident, is based on this reasoning:

First, plaintiff is of course liable as James' insurer although he was not driving his own but his father's car. This is because of the so-called "non-owner" rider attached to his own policy, making the insurer liable regardless of whether insured was driving his own or another's car;

Second, defendant company, having insured anyone driving the John Beiser car with John's consent, and James having been its driver when the accident occurred, it follows that defendant company was also the insurer of James against the same liability as was plaintiff company;

Third the two companies were therefore joint insurers of James J. Beiser against the same potential liability, and under the "contribution" provision in each policy must make proportionate contribution to the payment of any liability that may ultimately be established against the James J. Beiser estate. The result of this reasoning, if accepted, would be that because of the difference in maximum coverage, and within their respective limits, plaintiff's share would be $\frac{1}{11}$ and defendant company's $\frac{10}{11}$ of any liability ultimately established against the James J. Beiser estate.

This is plaintiff's case as made by its petition.

We first assume, at least temporarily, that plaintiff here stands, in all respects and for all purposes, in the shoes of its insured, James J. Beiser, or his personal representative.

II. Under plaintiff's contention, its insured, while driving John's car, became a "third party" for whose benefit defendant's policy was written. Iowa subscribes to the prevailing American rule that a contract between two parties may be enforced by a third person for whose benefit it was made. Young v. Bierschenk, 199 Iowa 309, 313, 201 N.W. 591; 17 C. J. S., Contracts, section 519c, page 1121 et seq., also citing Meyer v. Stortenbecker, 184 Iowa 441, 450, 165 N.W. 456; 12 Am. Jur., Contracts, section 277, citing Iowa cases.

This is true even when the third party beneficiary is not expressly named or identified, or even known when the contract is made, or when his beneficial interest is dependent on a con-

tingency, if he or the contingency is sufficiently described to make identification possible. 17 C. J. S., supra, section 519c(2)(d); 12 Am. Jur., supra, section 287.

But we also recognize that this right is always subject to the right of the original contractors to modify or terminate the contract before the third party has acquired rights under it. Coen & Conway v. Scott County Sav. Bk., 205 Iowa 483, 490, 218 N.W. 325, citing Peters v. Goodrich, 192 Iowa 790, 185 N.W. 903; Shult v. Doyle, 200 Iowa 1, 8, 9, 201 N.W. 787, 790. In the last cited case it is said, speaking of the third party's rights in such cases: "His rights are purely legal. They do not arise out of any equity. * * * The cause of action thus created in his favor is a bit of legal grace; it cost him nothing; it simply fell upon him, without effort or knowledge on his part. * * * He has no ground of appeal to equity, either to expand it or to prevent its shrinkage." See also Gilbert v. Sanderson, 56 Iowa 349, 9 N.W. 293, 41 Am. Rep. 103. The same principle was recognized in American Savings Bank v. Borcherding, 201 Iowa 765, 208 N.W. 518, where plaintiff as the party for whose benefit a contract was made attempted to reform it to express the intent of the actual parties to it.

III. Defendant here, by way of answer, pleaded affirmatively that its contract with John Beiser had been modified by the parties before the happening of the accident and that the policy by reason of such modification (Exhibit 2) would afford protection to neither owner nor driver while James J. Beiser was the driver of the car.

Plaintiff in reply attempted to avoid that affirmative defense by alleging fraud, mistake and lack of consideration in the inception of Exhibit 2. The trial court's ruling which struck that reply goes straight to the question of the right of a potential third party beneficiary to assert and litigate such matters as affecting the status of a contract to which it was not a party and in which it had no beneficial interest at the time of the alleged modification. The court in effect held that the third party, under circumstances as they appeared in the pleadings, had no such right. The trial court, in making it, stated that the ruling was based on Employers Mutual Cas. Co. v. American Automobile

Ins. Co., 10 Cir., Kan., 131 F.2d 802, and Stanfield v. W. C. McBride, Inc., 149 Kan. 567, 88 P.2d 1002.

These cases are important here since they deal with a situation analogous (with one exception) to the one confronting us. Both grew out of one accident. Neither was a proceeding for declaratory judgment. But they reveal the same contention as is made by plaintiff here, viz., that one for whose potential or contingent benefit a contract is made may assert fraud, mistake and lack of consideration in a modification of it by the original parties entered into before his rights under the original contract arose.

In each case the appellate court held the third party beneficiary could not avail himself of such contentions since the modification contract was not void, but at most, merely voidable.

Plaintiff attempted to distinguish these cases by pleading and argument that John Beiser, "within a reasonable time after learning the truth about Exhibit 2 and defendant's claim under it notified defendant in writing that he rescinded, repudiated and canceled" Exhibit 2.

But that notice did not affect or enlarge plaintiff's rights as a third party beneficiary. It did not rescind the modification agreement, Exhibit 2. It merely gave notice that John Beiser did not propose to be bound by Exhibit 2. United Wool Dyeing & Finishing Co. v. Werner & Co., 102 N. J. Eq. 322, 140 A. 465, 467.

The modification contract (Exhibit 2) was in effect before the liability, if any, of the James J. Beiser estate arose. It is still in effect, subject only to John Beiser's possible ability, by a sufficient showing, to bring about a judicial cancellation for fraud, mistake or lack of consideration. He has not commenced proceedings to that end. He has merely, since the accident, given notice of rescission. He is not made a party here, nor is he being subjected to any litigation or claim of liability for damages growing out of the Bruch accident.

The most that can be said if there was fraud or mistake inducing John Beiser to consent to the "Driver Exclusion Endorsement" (Exhibit 2) is that the modification was voidable. James J. Beiser, had he survived the tragedy, would have been bound by the terms of his father's insurance as they stood when the

collision occurred. Had his father been subjected to or threatened with damage actions as a result of the accident, *he* could doubtless have asserted the rights he had paid for when he took out the insurance and could have litigated in any appropriate way, as against defendant company, the voidability of the modification contract which purported to curtail those rights.

In absence of any element of estoppel his son is not in that position. As was said in the Shult v. Doyle case, supra (200 Iowa 1, 8, 9) his potential or contingent rights under his father's insurance as originally written gave him "no ground of appeal to equity, either to expand it or to prevent its shrinkage." And as was the case in Stanfield v. W. C. McBride, Inc., supra, the change or modification was made before James became the driver of his father's car or was an insured under or, so far as the record shows, had any knowledge of, the insurance contract. 149 Kan. 567, 88 P.2d 1002, 1004.

IV. Defendant corporation, in an excess of caution, urges that James J. Beiser, if found liable, would as the active perpetrator of the wrong be primarily liable and his father as owner of the car secondarily liable. Restatement of the Law, Restitution, section 96, is cited: "A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability."

That seems to be the same proposition announced by us in Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1142, 1143, 49 N.W.2d 501. We have later expressed our allegiance to it in Hathaway v. City of Sioux City, 244 Iowa 508, 516, 517, 57 N.W.2d 228.

Plaintiff's argument in reply to this proposition is that defendant company "insured not only John *but also James*. If James *was* primarily liable, *they insured that primary liability.*"

In view of our holding already announced in prior divisions we need not pass on this interesting question. We have already pointed out that at the time of the accident James was not insured under his father's policy issued by defendant corporation.

V. What we have said also makes unnecessary any discussion of plaintiff's appeal as to the Bruch defendants. They have dismissed their actions as to John Beiser. In event they establish liability against James Beiser's estate or personal representative they may of course assert their judgments against any insurer of James. But as they are making no claim against John, any question as to liability of his insurer is moot.

VI. We have resolved the case upon the assumption that plaintiff's rights are measured or at least limited by those that might have been asserted by James Beiser had he survived the accident. Certainly plaintiff's rights can rise no higher than his since plaintiff is claiming by subrogation under its contract with him.

The decisions of the trial court are both affirmed.—Affirmed.

OLIVER, C.J., and BLISS, GARFIELD, WENNERSTRUM, HAYS, THOMPSON, and LARSON, JJ., concur.

PETERSON, J., takes no part.