COEN & CONWAY, Appellant, v. SCOTT COUNTY SAVINGS BANK et al., Appellees.

484

MARCH 6, 1928.

*John C. Higgins,* for appellant.

*J. C. Hall,* for DeLacy and Walsh Realty Company, appellees.

*Albert W. Hamann,* for Scott County Savings Bank, appellee.

*M. F. Donegan,* for Angelos Dellis, appellee.

EVANS, J.—The plaintiff is a firm of building contractors, which, under contract with Licometros, erected certain improvements upon realty owned by the defendant Scott County Savings Bank, and leased by it to DeLacy, and subleased by DeLacy to Licometros. The latter is one of several associates, who were interested in the sublease, and who need not otherwise be named

herein. Licometros is an insolvent, and nothing is claimed against him herein. His personal liability to the plaintiff, however, is unquestioned. The plaintiff claims from DeLacy upon certain covenants contained in the lease from the defendant bank to DeLacy, as lessee. It claims that such covenants were a promise made for the benefit of third parties, and as such, it claims the benefit thereof. It claims to recover from the bank, as owner of the property, which, as such, had obtained the full benefit of the improvements, whereby it was enriched, and thereby rendered liable to the plaintiff, as a matter of law. It claims from the Walsh Realty Company as an assignee of DeLacy, in that this defendant purchased from DeLacy his leasehold interest and assumed all the obligations of DeLacy under his lease from the bank.

It appears that the defendant bank was the owner of certain valuable real estate situated in the city of Davenport, which was occupied by certain old and undesirable buildings. These were not conducive to rental values. DeLacy was a real estate operator in the same city. On April 9, 1919, a contract of lease and option to buy was entered into between him and the bank, whereby DeLacy leased the property from the bank for a period of five years, at a stipulated cash rental, with the further proviso that DeLacy should, on or before November 1, 1923, expend not less than $6,000 in improvements upon such realty, which should become a part of the real estate, and should not be removable at the expiration of the lease. In that connection, DeLacy covenanted in the lease to protect the bank against mechanic's liens, and to produce vouchers to the bank for all expenditures incurred thereby. It was further provided in said lease that DeLacy should, during the time of the lease, hold an option to buy the realty at the price of $90,000; that, if he should exercise such option, before incurring such expenditures for improvements, he should thereby be released from further obligation to make such expenditure. His obligation as a lessee should cease when he became purchaser of the title.

On April 17, 1919, DeLacy subleased the property to Licometros and associates, under a lease which bound them to make certain improvements at their own expense, and to pay a certain cash rental. This lease was acceded to by the bank, as a part performance by DeLacy of his leasehold obligations. There-

upon, Licometros *et al.* entered into a contract with the plaintiff for the erection of the improvements which they had undertaken. The making of these improvements involved a tearing down of the existing buildings. The work of tearing down began on or about May 12, 1919. On or about such date, the bank and DeLacy, as parties of, the first part, and the plaintiff, as party of the second part, mutually executed a writing, whereby they mutually disclaimed any future liability of either the bank or DeLacy to the plaintiff, and whereby it was agreed by the plaintiff that it would look to Licometros *et al.* alone. The plaintiff performed its contract, and became entitled to receive the sum of $4,742. In settlement, the plaintiff accepted from Licometros *et al.* the sum of $2,042 in money, and their promissory note for $2,700, which note was later reduced by payment to the sum of $2,000. While it held this note, and about three years after its date, Licometros and his associates became bankrupt. Thereupon, the plaintiff turned to these defendants. It filed its petition in two counts,—the first declaring upon a mechanic's lien, and asking foreclosure thereon. Because of the running of the statute of limitations, it has not pressed such count, and it is not before us. In its second count, it has sought to establish personal liability, and this is the count that is presented to our consideration.

I. We will first consider the case against DeLacy. The case was submitted upon the evidence of the plaintiff alone. It is necessarily so submitted here. This results from the sustain-

ing of the defendants' motion to dismiss. It is argued for appellant that, in such a case, we must accept the testimony of the plaintiff in the most favorable light which can be given to it. If the case were at law, and on trial before a jury, this contention would be correct. As applied to an equity case, it is not correct. Even in a law case, on trial before the court, we have held that we will consider such a case upon appeal on its whole merits, and will affirm a ruling by the district court sustaining a motion to dismiss if, upon the whole record, the court would have been justified in reaching the same result upon the full merits. *Griffith v. Arnold & Rasmussen,* 204 Iowa 1216. The practice in the district court of presenting a motion to dismiss plaintiff's case at the close of

his evidence is not to be commended in an equity case, and should be deemed perilous procedure. In obtaining a favorable ruling in such a case, the defendant closes the door upon himself against the introduction of further evidence. If we should disagree, on appeal, with the ruling of the district court on the motion, our finding would have to be final, and the defendant might find himself defeated for want of producing the evidence that might have saved him. The appellant is entitled to whatever advantage might inure to it by the operation of this rule, and it has devoted earnest argument to that end. Even so, we are required to try the case *de novo* here, and on its merits as they appear from the actual record before us. *Brewster v. Brewster,* 194 Iowa 803; *Dolan v. Newberry,* 200 Iowa 511; *Matthews v. Quaintance,* 204 Iowa 520. Some complaint is made by appel-

 lant that the appellees erroneously purported to sustain their own affirmative defense by improper cross-examination of plaintiff's witness, and that such cross-examination should now be rejected by us, as out of place. This contention cannot be sustained. We cannot deal here with the question of the order of introduction of evidence, or whether the appellees put in their evidence below out of order, or whether they put it in the form of cross-examination, when they ought to have made the witness their own. Such matters will be considered on the weight and credibility of the evidence, for what they may be worth, but the decree below is not to be reversed on any such ground. One of these complaints made by the appellant is that the appellees were permitted to introduce in evidence the contract of May 12, 1919, by cross-examination of one of the plaintiff partners, who admitted its execution. If our procedure were otherwise than as stated, the appellant would have no possible grievance at this point. The contract of May 12, 1919, was

 pleaded by DeLacy in his answer, and a copy thereof set forth therein. Its execution was admitted by the plaintiff in its reply, with the qualification only that it was void for want of consideration. In view of such state of the pleadings, it was unnecessary for the defendants to put the contract in evidence. Neither its execution nor its content was in issue. Such contract was as follows:

"Agreement. This agreement made by and between M. J. DeLacy and the Scott County Savings Bank, first parties, and Coen & Conway, second party, witnesseth:

"The first parties have agreed and do hereby agree to permit the second party to do certain remodeling and make certain improvements in the building 112-114 West Third St., Davenport, Iowa.

"In consideration of this permission granted by the first parties the second party agrees that it will not make or claim any mechanic's lien against the said building, or the additions and improvements made therein, or the ground on which said building is situated, to secure payment of any part of the amount due second party for furnishing any labor or material or doing any part of said work, and the second party expressly agrees that it will look solely and entirely for payment to Peter Licometros, *et al.*, with whom the second party has made a contract to do said work. Signed this 12th day of May, 1919: M. J. DeLacy; Scott County Savings Bank, by J. H. Hass, Prest.; Coen & Conway."

It is urged in argument that the contract had no consideration, in that there was no existing dispute between the parties, and that neither party parted with anything. We do not think the point is available. In a strict sense, the paper was not a contract, though it be so referred to in the record. It was in the nature of a declaration of mutual understanding and intent. It amounted to a denial and a disclaimer by the second party of any purpose to claim such responsibility. The legal relation of the owner and the lessee and the sublessee to this property was not free from complication and from possible misunderstanding. In contracting with the sublessee, the plaintiff was entering a zone of doubt in legal rights. It was a zone out of which much litigation had arisen. It was to the mutual interest of all the parties that each should declare his attitude. Having declared it, then each party was entitled to conform his future conduct to the mutual attitude so declared. DeLacy had had nothing to do with the employment of the plaintiff, nor had the bank. If he was threatened with liability for the contract with Licometros, he might well demand indemnity. He could gain nothing by the performance of the contract by Licometros if the cost of the improvements had to be paid ultimately by himself. The

plaintiff partner who had charge of the work testified that, throughout all the work, he was looking to Licometros alone for compensation, and that at no time had he relied upon DeLacy or intended to claim anything from him. We think that the writing in question was quite fatal to the plaintiff, and that it left no standing ground for it to assert the claims which it does herein.

We may add further that, quite independently of this paper, the record fails to disclose the asserted liability of De-Lacy. If DeLacy had proceeded to carry out his contract of  lease with the bank according to its terms, and if he had employed the plaintiff to make the improvements called for, then, of course, he would be liable to the plaintiff, both under his personal contract with it and under his covenant with the bank. He did not perform his contract with the bank, so far as the expenditure of $6,000 was concerned. His liability for that failure would be to the bank. He could not be liable to a third party under his covenant with the bank, except on the theory that he had contracted with such third party for labor or material in the making of such improvements. When he made the sublease to Licometros, and Licometros employed the plaintiff to make improvements upon the leased premises at his expense, questions of law might easily arise as to DeLacy's liability as a lessor, and as to the liability of his leasehold for mechanic's liens; but such liability, if any, would be secondary, and not primary. It would not be a liability upon express covenant, as claimed herein.

The plaintiff's contract was exclusively with Licometros, who had a leasehold of the property. The plaintiff acquired a mechanic's lien against such leasehold for the improvements thereon, subject, however, to the rights of the lessor. We so held in *Queal Lbr. Co. v. Lipman*, 200 Iowa 1376. But the right of the mechanic's lien holder in such a case rises no higher than that of the lessee with whom he contracted. He must enforce his lien against the improvements and the leasehold together. He cannot sever the improvements from the land in such a case, nor abrogate in any manner the rights of the lessor to the improvements at the expiration of the lease. Still less could he

claim personal liability against the lessor for the contract of the lessee. Upon this record, the case resolves itself into an attempt to hold DeLacy for the personal contract of Licometros and his associates. Unless he is personally liable for the undertaking of Licometros, he cannot be liable under his covenant. His covenant bound him only to pay the bills which he should incur. His liability to third parties for such bills would arise when he incurred them. His liability, therefore, was neither greater nor less because of his covenant with the bank. That covenant was for the protection of the bank against the incumbering of the property by liens. If he had made the improvements, he would necessarily have incurred accounts therefor. He would have been personally liable for every one of them. Mechanic's liens could have been filed, if he had failed to pay them. As already stated, that part of DeLacy's contract was never performed. The bank may either claim damages for breach, or it may waive and acquiesce. The plaintiff has no right of interference with either course. Even if the covenant be treated as being for the benefit of third parties, yet the rights of such third parties are always subject to the rights of the original parties and to any modifications which the original parties may make before knowledge of the covenant is imparted to the third party. *Peters v. Goodrich*, 192 Iowa 790; *Shult v. Doyle*, 200 Iowa 1. From whatever point we view the case, therefore, we reach the conclusion that the plaintiff cannot predicate action upon the express covenant of the lease between DeLacy and the bank. This conclusion necessarily disposes of the case as against the Walsh Realty Company, as the assignee of DeLacy.

II. The claim against the bank is predicated not upon contract, either express or implied, but upon what is termed "legal duty" and "legal morals." The specific claim put forward is that the bank has been enriched by the improvement of its property, which was created at the labor and expense of this plaintiff. Has the bank been "enriched" in any legal sense? It leased valuable property to DeLacy for five years, at a rent which is presumed to be the reasonable rental value thereof. It was already a rent-paying property. The lease stipulated for a certain cash rental, plus $6,000 worth of improvements. If it had fixed a total rental in terms of cash, it would have simply added $6,000 to

the sum total of rents for five years. It could have stipulated a permission to DeLacy to expend $6,000 in improvements and to obtain credit for his rent to that extent. Such is the net effect of the contract. In either form, the bank got nothing in addition to its rental. Similar provisions were made in the sublease to Licometros. In each case, the lessor got nothing but his rent. In legal effect, the bank has paid $6,000 for the improvements which it obtained. We deem it clear, therefore, that there was no enrichment of the bank by these transactions. Whether, if the fact were otherwise, the plaintiff could recover on the mere theory of enrichment is a question ably discussed in an interesting brief by appellant, upon which we have no occasion to pass. We reach the conclusion that the plaintiff's case was properly dismissed.

The decree below is, accordingly,—*Affirmed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.