**TED SPANGENBERG CO., Incorporated,**
Plaintiff,

v.

**PEOPLES NATURAL GAS, DIVISION
OF NORTHERN NATURAL GAS
COMPANY,**
Defendant.

**Civ. No. 3–747–W.**

United States District Court
S. D. Iowa, W. D.

Nov. 26, 1969.

Raymond E. Pogge, Council Bluffs, Iowa, Jack N. Hays of Gable, Gotwals, Hays, Rubin & Fox, Tulsa, Okl., for plaintiff.

Philip J. Willson, and Frank W. Pechacek, Jr. of Smith, Peterson, Beckman & Willson, Council Bluffs, Iowa, for defendant.

## MEMORANDUM

HANSON, District Judge.

This is an action to recover the sum of $12,966.94 representing the alleged balance due for the installation of gas-fueled heating and air-conditioning equipment. The plaintiff, Ted Spangenberg Company, Incorporated, is an Oklahoma corporation specializing in the installation of heating and cooling equipment. Defendant, Peoples Natural Gas, is an Iowa corporation primarily engaged in supplying natural gas. The Court's jurisdiction is predicated upon diversity of citizenship and the requisite jurisdictional amount. Section 1332, 28 U.S.C. This non-jury cause was tried to the Court on July 17, 1969.

Certain facts are without dispute. The evidence shows that in late 1965 plaintiff entered into an oral agreement with Cecil R. Sullivan to install gas heating and electric cooling equipment in an apartment building Sullivan was constructing in Council Bluffs, Iowa. Ted Spangenberg, president and major shareholder of plaintiff corporation, has been in the business of installing such equipment for more than twenty years. Mr. Spangenberg testified that he had successfully completed other projects in the past for Sullivan and that they were close friends.

Work commenced in February 1966 at which time plaintiff began to rough-in the necessary piping and sheet metal. Sullivan paid plaintiff $9,125 on March 9, 1966 and $7,500 on June 10, 1966 for the preliminary work.

In April 1966 the question of installing a gas rather than an electrical air-conditioning system arose. The evidence clearly demonstrates that defendant, Peoples Natural Gas (hereinafter referred to as Peoples), actively sought to persuade Sullivan to substitute a gas air-conditioner for the electrical system. It is also without dispute that plaintiff was fully aware of People's negotiations with Sullivan during this time. Also, even though plaintiff had completed substantial preliminary work, the cooling facility could be either gas or electric. Peoples' persuasions bore fruit and Sullivan signed and accepted a letter dated June 8, 1966 which is set forth here:

"Mr. Cecil R. Sullivan, 4930 So. Columbia, Tulsa, Oklahoma

"Dear Sir:

"We have had discussions with you concerning the apartment building at 38 Dillman Drive in Council Bluffs, Iowa which you are constructing and our interest in the installation of gas-fired facilities for heating and air-conditioning in such apartment building.

"This letter will represent the present intention of Northern Natural Gas Company, operating as Peoples Natural Gas Division, subject to the conditions hereinafter specified, to assist you in the installation of gas-fired facilities for heating and air-conditioning at the aforesaid apartment building by the initial payment by Peoples of the cost of such facilities and installation, not to exceed $34,700.00. Further it is understood that you would repay such amount, plus interest, to Peoples in installments over five years following completion of the apartment building.

"It is specifically understood that the present intentions of the parties as hereinabove expressed are subject to Peoples examining and approving the engineering drawings and specifications for the building and the facilities for heating and air conditioning therein, and, further, are subject to

the parties agreeing upon and executing appropriate forms of agreement embodying specific terms and provisions which are not expressed herein, such instruments to include promissory note, instruments securing repayment of amounts advanced as Peoples may deem necessary, and such other instruments as either party may deem necessary.

"If you agree that the terms of this letter accurately reflect our present intentions in these regards, would you please sign the original hereof in the space provided below and return to us, retaining the enclosed signed copy for your files.

"PEOPLES NATURAL GAS DIVISION

"/s/ E. E. (Gene) Zimmerman

"ACCEPTED
/s/ Cecil R. Sullivan
    Cecil R. Sullivan"

On October 17, 1966 after the gas facilities had been installed and tested, Peoples and Sullivan then entered into formal agreements which further crystalized these parties' intents as found in the June 8 letter. At this time four instruments were executed by Peoples and Sullivan: an agreement, a promissory note, a security agreement and a gas sales contract.

The agreement (Defendant's Exhibit A) is of particular relevance and is in part as follows:

"AGREEMENT

"THIS AGREEMENT is made and entered into as of the 17th day of October, 1966, by and between CECIL R. SULLIVAN and BETTY SULLIVAN, husband and wife, of 4930 Columbia, Tulsa, Oklahoma, hereinafter called "Customer," and NORTHERN NATURAL GAS COMPANY, operating as PEOPLES NATURAL GAS DIVISION, with offices as 2223 Dodge Street, Omaha, Nebraska, hereinafter called "Company."

"WITNESSETH:

"WHEREAS, Customer and Company entered into a preliminary letter agreement on June 8, 1966, which agreement provided that Company intended to assist in the financing of certain gas-fired facilities to be installed by Customer in the Colonial Plaza Apartments at 38 Dillman Drive in Council Bluffs, Iowa, subject to certain conditions, including approval of equipment and installation by Company, execution of a formal contract and supporting instruments properly secured, providing for repayment of said financing with interest; and

"WHEREAS, said apartment building has been substantially completed with gas-fired heating and cooling equipment approved by Company as to type and installation and the parties wish to evidence the completion of their agreement by execution of the aforementioned instruments.

"NOW, THEREFORE, in consideration of the premises and the mutual convenants and undertakings of the parties as hereunder set forth, it is agreed as follows:

"1. Company shall issue its check in the amount of $28,517 to Customer upon receipt of the following items from Customer:

\*    \*    \*    \*    \*    \*

d. Disclaimers of interest in said equipment (in form satisfactory to Company) from all persons, corporations, lending institutions, etc. having a present interest in the land or improvements comprising the said Colonial Plaza Apartments at 38 Dillman Drive, Council Bluffs, Iowa, together with a list naming all such persons, corporations and lending institutions, and an affidavit (in such form satisfactory to Company) stating that such list is complete.

\*    \*    \*    \*    \*    \*

"NORTHERN NATURAL GAS. COMPANY

Operating as Peoples Natural Gas Division

By /s/ _____
Vice President and General Manager

/s/ _____
Cecil R. Sullivan

/s/ _____
Betty Sullivan"

Following the execution of this agreement, First Federal Savings and Loan Association of Council Bluffs, the primary lending institution as holder of Sullivan's $450,000 note and mortgage on the apartment house, refused to execute a disclaimer. This was an express requirement of the October 17 agreement and implicit in the June 8 letter. First Federal's refusal was based on the fact that at that time Sullivan was in financial difficulty.

On April 26, 1967 the District Court of Iowa, Pottawattamie County, entered a judgment and decree of foreclosure in favor of First Federal Savings and Loan against Cecil Sullivan, Peoples Natural Gas, Ted Spangenberg Company, Inc., et al. Subsequently both plaintiff and defendant herein obtained judgments against Sullivan which apparently remain unsatisfied.

Plaintiff now seeks to recover the amount still due for installation of the gas equipment from Peoples Natural Gas. The only issue in the lawsuit concerns the nature and extent of Peoples' agreement to finance the installation of gas equipment. Spangenberg maintains that Peoples promised to pay plaintiff without condition if the equipment was installed. Peoples contends that it agreed to finance the installation subject to certain conditions being met by the builder, Sullivan.

█ Plaintiff's first theory of recovery is based on its status as a third-party beneficiary to the agreement between Sullivan and Peoples. Both parties are in agreement that Iowa substantive law is the decisional law to be applied in this case. Under Iowa law, a third-party beneficiary may sue to enforce a binding contract provided he is either a donee or a creditor beneficiary. Olney v. Hutt, 251 Iowa 1379, 105 N.W.2d 515 (1960). Conversely, an incidental beneficiary, one not classified as either a donee or creditor beneficiary, has no right to a performance of the agreement. Johnson Farm Equipment v. Cook, 230 F.2d 119 (8th Cir. 1956). Plaintiff's contention that it is a creditor beneficiary to the agreement between Sullivan and Peoples is vigorously disputed by defendant.

█ Assuming, without deciding, that Spangenberg is a creditor beneficiary does not, in itself, dispose of the matter. It is also a generally recognized rule of law that in order for a third person to enforce a contract made for his benefit, the original agreement between the promisor and promisee must be a binding obligation. In other words, a third-party beneficiary's right to sue depends upon the liability of the promisor as established by the original agreement. See Olney v. Hutt, 251 Iowa 1379, 105 N.W.2d 515 (1960); Malanaphy v. Fuller & Johnson Mfg. Co., 125 Iowa 719, 101 N.W. 640 (1904); Coen & Conway v. Scott County Savings Bank, 205 Iowa 483, 218 N.W. 325 (1928); Iowa Home Mut. Cas. Co. v. Farmers Mut. Hail Ins. Co., 247 Iowa 183, 73 N.W.2d 22 (1955). These cases support the proposition that the liability on the underlying agreement cannot be enlarged by a third-party beneficiary. The underlying agreement between Sullivan and Peoples clearly predicates Peoples' obligation to finance upon certain conditions. Sullivan was unable to secure the necessary disclaimers, one of the conditions, and consequently, Peoples was under no duty to finance Sullivan. *A fortiori*, if Sullivan could not enforce the finance agreement, neither can Spangenberg, as a third-party beneficiary. Plaintiff's contention that it had no knowledge of any conditions is irrelevant. Spangenberg's rights can rise no higher than Sullivan's under the agreement. The Court thus finds as a matter

of law that plaintiff is not entitled to recover as a third-party beneficiary.

■ Plaintiff's second theory of recovery is promissory estoppel. Restatement of Contracts, Section 90, the most commonly accepted definition of promissory estoppel, states:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Promissory estoppel as a theory of recovery has been recognized in Iowa as well as the federal courts in the Eighth Circuit. See Shell Oil Co. v. Kelinson, Iowa, 158 N.W.2d 724 (1968); Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 48 A.L.R.2d 1058 (1954); Kelly Tire Serv. Inc. v. Kelly-Springfield Tire Co., 338 F.2d 248 (8th Cir. 1964); Whorral v. Drewrys Ltd., U.S.A., Inc., 214 F. Supp. 269 (S.D.Iowa 1963); Bixby v. Wilson & Co., 196 F.Supp. 889 (N.D.Iowa 1961).

■ The elements most commonly associated with this theory are: (1) a clear and definite oral promise, (2) reasonable reliance by plaintiff on said promise, and (3) the weight of the equities clearly preponderates in favor of the plaintiff. See Miller v. Lawlor, *supra;* Shell Oil Co. v. Kelinson, *supra.*

Plaintiff contends that the promise defendant made through its representatives was to reimburse plaintiff for the installation of the gas equipment without condition. This oral promise plaintiff argues is evidenced in part by a letter from Peoples dated August 4, 1966 (Plaintiff's Exhibit 9). This letter states:

> "Confirming our previous negotiations, we agree to finance the installation of gas heating and air-conditioning equipment (project description) for C. R. Sullivan, owner of the project."

No reference is made of the conditions upon which the financing was based. However, "Confirming our previous negotiations" does inject ambiguity into exactly what was meant. Certainly, standing alone, this cannot be considered conclusive evidence of a "clear and definite" promise. Plaintiff's interpretation of the letter is that "Confirming our previous negotiations" refers to the promise to pay without condition made by defendant to Ted Spangenberg. Defendant, of course, denies this and, in substance, contends that this language incorporates the conditions embodied in its agreement with Sullivan.

■ A rule of construction states that where language is susceptible to more than one interpretation, then the other evidence can be considered in ascertaining the true intent of the parties. In support of its contention that defendant's promise to pay was not subject to any condition, plaintiff points out certain matters it believes supports its position. Plaintiff introduced two letters sent by defendant to plaintiff's suppliers requesting confirmation of certain purchases (Plaintiff's Exhibits 13, 14). The language plaintiff relies on is the last paragraph of these letters:

> "We will appreciate this information so we may proceed to settle with Mr. Spangenberg."

The Court cannot agree that this sentence is convincing proof of a clear and definite oral promise to finance without condition.

Plaintiff also points to the testimony of Duane Townsend to establish the existence of the promise. Townsend was defendant's representative with whom Spangenberg had the most contact. Relevant portions of his testimony elicited on cross-examination are as follows:

Q. And one of the inducements for Mr. Sullivan to use gas was a financing arrangement, wasn't it?

A. Yes.

Q. And you told Mr. Sullivan if he'd put in gas that your company

would arrange some financing, isn't that correct?

A. If all the obligations were met for financing.

\* \* \* \* \* \*

Q. \* \* \* [W]hen you were in Tulsa and you visited with Mr. Spangenberg, he knew that you had agreed to finance this project, didn't he?

A. I'm not sure what he knew.

Q. Well, when do you think he first found out that it was to be financed?

A. I think he could reasonably assume probably while we were there that some work was being done, yes.

\* \* \* \* \* \*

Q. \* \* \* When the subcontractors come in and visit with you about these jobs, and they are to supply the labor and material and you are to finance the job, you make this assurance to the subcontractor, don't you?

\* \* \* \* \* \*

A. That we're assuring the subcontractor of payment?

Q. Yes.

A. Is that what you're asking?

Q. Yes.

A. I don't believe this is right.

Q. Well,—

A. Only by—if everything else is done properly, when then it would be.

The Court is unable to construe this testimony in plaintiff's favor. It seems just as consistent with Peoples' explanation of its financing agreement with plaintiff.

Plaintiff also relies upon events which transpired at an October 1966 meeting at First Federal Savings and Loan in Council Bluffs. At this meeting, Ted Spangenberg testified he asked Sullivan why his name was omitted from a list of creditors. Sullivan supposedly answered that Peoples was going to pay him and, according to Spangenberg's testimony, the representative of Peoples who was present said nothing to contradict Sullivan's statement. Again, the Court is unable to find as the trier of fact that this establishes the existence of the promise as plaintiff contends. This meeting was in October. It is not clear whether it preceded or followed the discovery that because of Sullivan's financial status First Federal would not grant a disclaimer to Peoples. Further, the representative of Peoples at this meeting was a Mr. Zimmerman and not Mr. Townsend with whom plaintiff had presumably had the most contact. The Court is unwilling to interpret Zimmerman's silence as evidence of a clear promise which supposedly was made some four months previous.

Also, the Court is unable to construe Peoples' payments to the suppliers of the major air-conditioning equipment as evidence of any promise to plaintiff. The finding of this Court is that plaintiff has failed to establish by a preponderance of the evidence a clear and definite oral promise to allow recovery.

Furthermore, even if the Court assumed that plaintiff had satisfactorily proven such a promise, it would be difficult to find reasonable reliance upon such a promise when the evidence shows that plaintiff was aware of the June 8 agreement between Peoples and Sullivan. However, Ted Spangenberg testified that he couldn't remember for sure when he first saw the letter. From the evidence in this case it would seem that plaintiff relied upon statements made by Sullivan concerning Peoples' obligation rather than to ascertain the exact financial arrangements. Also, the Court finds substance in defendant's argument that regardless of whether plaintiff in fact knew of the conditions imposed, Spangenberg should have known or made an effort to ascertain the exact conditions. The Court believes, absent any evidence of custom and usage to the contrary, that it is unreasonable for a businessman to think that a party will agree to finance without some condition.

Further, the Court would be hardpressed to find even the third element of promissory estoppel which is that the equities preponderate in plaintiff's favor.

Not wishing to belabor the matter further, this Court finds that there is insufficient proof on each of the three elements of promissory estoppel to allow plaintiff to recover thereon.

 In as far as plaintiff asserts guaranty as a basis of recovery, the Court finds the evidence insufficient to sustain such a theory. Guaranty is defined as a promise to answer for the debt, default or miscarriage of another. Foundation Press v. Bechler, 211 Iowa 1217, 233 N.W. 666 (1930). A contract of guaranty must be in writing and should be definite and certain. Iowa Code 622.32 (1966). Furthermore, Iowa law provides that a guaranty agreement should be construed according to the intention of the parties as disclosed by the language employed and the surrounding circumstances. Miller v. Gerlings, 256 Iowa 569, 128 N.W.2d 207 (1964).

Although there are various writings in evidence, particularly the letter of August 4, 1966, none can be validly construed as a contract of absolute guaranty when viewed in conjunction with the rest of the evidence in this case. Consequently, for many of the same reasons that prevent plaintiff from recovering on promissory estoppel, the Court holds that plaintiff cannot recover on a theory of guaranty.

The final theory upon which plaintiff relies is that of an express contract between plaintiff and defendant. Plaintiff must prove the existence of such a contract by a preponderance of the evidence. Most, if not all of the Court's reasoning as to promissory estoppel, applies with equal force here. The evidence is insufficient to prove that defendant promised to pay plaintiff for the installation without any conditions. The only reasonable conclusion that can be reached from the evidence presented is that there was never a "meeting of the minds" as to the nature and extent of the financing agreement between plaintiff and Peoples.

Accordingly, it is hereby ordered that judgment be entered for the defendant and costs assessed against the plaintiff.