**TED SPANGENBERG CO., Inc.,**
**Appellant,**

v.

**PEOPLES NATURAL GAS, DIVISION OF NORTHERN NATURAL GAS COMPANY, Appellee.**

**No. 20198.**

United States Court of Appeals,
Eighth Circuit.

March 23, 1971.

---

Raymond E. Pogge, Pogge, Root & Steege, Council Bluffs, Iowa, for appellant.

Frank W. Pechacek, Jr., Council Bluffs, Iowa, Philip J. Willson, Council Bluffs, Iowa, T. N. Wright, Omaha, Neb., for defendant-appellee.

Before VAN OOSTERHOUT and BRIGHT, Circuit Judges, and NEVILLE, District Judge.

NEVILLE, District Judge.

Appellant here, plaintiff below, asserts that the trial court in a non jury diversity case, erred in its findings of fact and conclusions of law which resulted in an order of judgment for defendant, 305 F.Supp. 1129. After a careful review of the record and the briefs of counsel, we find no error and we affirm. A somewhat detailed recital of the facts is necessary to an understanding of the issues raised.

Plaintiff-Appellant, an Oklahoma corporation engaged in the business of installing heating and air-conditioning equipment, seeks a recovery of $12,966.-94 from the defendant Peoples Natural Gas, Division of Northern Natural Gas Company (Peoples), an Iowa corporation engaged primarily in the business of supplying natural gas, for the installation of gas fueled heating and air-conditioning equipment in an apartment building constructed by one Cecil R. Sullivan (not a party to this action) in Council Bluffs, Iowa.

The well written memorandum opinion of Honorable William C. Hanson, the trial judge, sets forth the evidence at some length, much of which is undisputed. Spangenberg the president and major shareholder of plaintiff testified that on previous occasions he successfully had completed installation projects for Sullivan, and that the two of them were close friends. In November or December of 1965, Spangenberg orally agreed with Sullivan for a price of $25,000 to install the temperature control system in Sullivan's Council Bluffs apartment house construction project. It had been Sullivan's original intent to install gas fueled heating equipment with an electric air conditioning system. Spangenberg commenced work under this agreement in February of 1966, and on March 9 received part payment in the amount of $9,125.

The following month, Sullivan was approached by Peoples, the projected fuel supplier for the gas equipment, with a suggestion that he change his planned air conditioning component from electricity to gas fuel, contending for the advantages of a unitary gas system—i. e., lower fuel and maintenance costs—despite an original cost increase of $6,-000. Apparently from the outset, Sullivan and Peoples discussed the possibility that Peoples might finance the installation of a completely gas fueled system.

During the course of its negotiations with Sullivan Peoples' representatives were in contact with Spangenberg. Confusion surrounds the frequency and content of these discussions, there being no documentary evidence recording exactly what transpired. It is clear that sometime prior to April 22, Spangenberg attended a meeting with a Mr. Max Williams, representing Peoples, and a Mr. Fred Grasso, representing Engineered Equipment Company, the distributor of the gas air conditioning equipment which ultimately was installed. Another meeting of the parties was held in Tulsa, Oklahoma circa June 8, 1966 which was attended by a Mr. Duane Townsend the representative of Peoples and the one with whom plaintiff had the most contact.

It does not appear that any work directly attributable to the installation of the gas air conditioning system was undertaken prior to June 11, 1966. Work however had progressed by that time under the original agreement between Spangenberg and Sullivan. The duct and grill work done by L. A. King and Spangenberg was completed in April, 1969. The work done by Nelson Heating and Air Conditioning was finished and paid for by April 3, 1966. The piping installation work done by Armstrong Cork and Supply Co. and Spangenberg was largely completed by June 1, 1966. On June 10, 1966 Spangenberg received a second part payment from Sullivan in the amount of $7,500.[1]

At about this time, Peoples and Sullivan reached a preliminary agreement regarding the financing of the installation of a unitary gas system. The intentions of the parties at that stage and the conditions thereof are expressed in a letter from Peoples to Sullivan dated June 8, 1966.[2]

On June 11, Spangenberg received specifications regarding the installation of the two Arkla chiller units to be used in the gas air conditioning system from the manufacturer's representative Engineered Equipment Company. On June 14 and 15, Peoples ordered the above mentioned equipment in its own name, although delivery and payment were not made until August 10, 1966. Spangenberg was requested by Peoples to produce his own drawings relating to installation of the gas equipment, and to supply Peoples with a list of his materials, suppliers, and sub-contractors. Spangenberg submitted a second revised list of labor and materials to Peoples on July 29, 1966, in which the total price for installation is stated to be $40,864. The cost increase over the $25,000 estimate in Spangenberg's original agreement with Sullivan is due in part to the changeover from electric to gas air conditioning, but further reflects the addition of 4 basement apartments and additional heating for other basement apartments and additional heating for other basement and hallway areas. In the latter part of August, 1966, Peoples requested and received confirmation of Spangenberg's revised charges from several of his subcontractors.

Spangenberg testified that at the time he submitted the lists of labor and mate-

---

1. Plaintiff's complaint alleges that in all it received payment of $28,972.00 against a total charge of $40,864.00.

2. "Dear Sir:
We have had discussions with you concerning the apartment building at 38 Dillman Drive in Council Bluffs, Iowa which you are constructing and our interest in the installation of gas-fired facilities for heating and air conditioning in such apartment building.
This letter will represent ·the present intention of Northern Natural Gas Company, operating as Peoples Natural Gas Division, subject to the conditions hereinafter specified, to assist you in the installation of gas-fired facilities for heating and air conditioning at the aforesaid apartment building by the initial payment by Peoples of the cost of such facilities and installation, not to exceed $34,700.00. Further it is understood that you would repay such amount, plus interest, to Peoples in installments over five years following completion of the apartment building.

It is specifically understood that the present intentions of the parties as hereinabove expressed are subject to Peoples examining and approving the engineering drawings and specifications for the building and the facilities for heating and air conditioning therein, and further, *are subject to the parties agreeing upon and executing appropriate forms of agreement embodying specific terms and provisions which are not expressed herein, such instruments to include promissory note, instruments securing repayment of amounts advanced as Peoples may deem necessary, and such other instruments as either party may deem necessary.* [Emphasis added]
If you agree that the terms of this letter accurately reflect our present intentions in these regards, would you please sign the original hereof in the space provided below and return to us, retaining the enclosed signed copy for your files.
PEOPLES NATURAL GAS DIVISION
By /s/ E. E. (Gene) Zimmerman
ACCEPTED
/s/ Cecil R. Sullivan
    Cecil R. Sullivan

rials he made inquiry to Mr. Townsend regarding the financing of the project. There is substantial dispute as to the nature of the oral representations made by Mr. Townsend but on August 4, 1966, Spangenberg received a letter from Peoples containing a written expression of Peoples' intent.[3] At the time of the receipt of this letter or within a few days thereafter all but $90 of the work to be performed by Spangenberg had been completed.[4]

On October 17, 1966 after the gas facilities had been installed and tested, Peoples and Sullivan entered into formal agreements which the trial court found in effect crystallized these parties' intentions as originally expressed in the June 8, 1966 letter. At this time four instruments were executed by Peoples and Sullivan: an agreement, a promissory note, a security agreement and a gas sales contract. The agreement, which contains Peoples undertaking with regard to financing, makes Peoples' liability contingent upon Sullivan's obtaining certain disclaimers.[5]

First Federal Savings and Loan Association of Council Bluffs, Iowa, the primary lending institution and holder of Sullivan's $450,000 note and mortgage on the apartment house, refused after the execution of the October 17th agreement to execute the desired disclaimer and in fact in the late fall of 1966 began foreclosure proceedings. Sometime in October 1966, a creditors meeting was held at the offices of First Federal Savings and Loan Association in Council Bluffs, which meeting was attended by

---

3. "Dear Mr. Spangenberg:
   *Confirming our previous negotiations*, we agree to finance the installation of gas heating and air conditioning equipment at 38 Dillman Drive, Council Bluffs, Iowa, for C. R. Sullivan, owner of the project. Yours very truly,
   /s/ L. M. Spence
   L. M. Spence
   Area Manager" [Emphasis added]

4. The work remaining consisted in the wiring and testing of the air conditioning equipment to be done by U. S. Supply and Spangenberg. The materials and equipment supplied by Cooper Supply and the labor done by appellant in connection therewith were furnished as late as September 13, 1966, but had nothing to do with the changeover from electric to gas air conditioning. As indicated in August 1966 Peoples, rather than appellant, paid for the equipment supplied by Engineered Equipment Co.

5.              "AGREEMENT
   THIS AGREEMENT is made and entered into as of the 17th day of October, 1966, by and between CECIL R. SULLIVAN and BETTY SULLIVAN, husband and wife, of 4930 South Columbia, Tulsa, Oklahoma, hereinafter called 'Customer,' and NORTHERN NATURAL GAS COMPANY, operating as PEOPLES NATURAL GAS DIVISION, with offices as 2223 Dodge Street, Omaha, Nebraska, hereinafter called 'Company.'
   WITNESSETH:
   WHEREAS, Customer and Company entered into a preliminary letter agreement on June 8, 1966, which agreement

provided that Company intended to assist in the financing of certain gas-fired facilities to be installed by Customer in the Colonial Plaza Apartments at 38 Dillman Drive in Council Bluffs, Iowa, *subject to certain conditions*, including approval of equipment and installation by Company, execution of a formal contract and supporting instruments properly secured, providing for repayment of said financing with interest; and
   WHEREAS, said apartment building has been substantially completed with gas-fired heating and cooling equipment approved by Company as to type and installation and the parties wish to evidence the completion of their agreement by execution of the aforementioned instruments.
   NOW, THEREFORE, in consideration of the premises and the mutual covenants and undertakings of the parties as hereunder set forth, it is agreed as follows:
   1. Company shall issue its check in the amount of $28,517 to Customer upon receipt of the following items from Customer:
   * * *
   d. *Disclaimers of interest in said equipment (in form satisfactory to Company) from all persons, corporations, lending institutions, etc. having a present interest in the land or improvements comprising the said Colonial Plaza Apartments* at 38 Dillman Drive, Council Bluffs, Iowa, together with a list naming all such persons, corporations and lending institutions, and an affidavit (in such form satisfactory to Company) stating that such list is complete." [Emphasis added]

Spangenberg, Sullivan, and a Mr. Zimmerman as a representative of Peoples. Spangenberg's name did not appear on a list of creditors presented at this meeting, and Sullivan told Spangenberg that the reason for the omission was that Peoples would pay him directly.

On April 26, 1967, First Federal Savings and Loan Association obtained a judgment and decree of foreclosure declaring its mortgage lien on Sullivan's apartment to be paramount and superior to the liens of both plaintiff Spangenberg and defendant Peoples, as well as liens of all other creditors. On February 23, 1968, Peoples obtained a judgment against Sullivan based upon Sullivan's promissory note executed as part of the October 17 agreement. On March 3, 1968, by agreement between Spangenberg and Sullivan, a judgment in favor of Spangenberg for $16,098.47 was entered against Sullivan. The last two judgments in favor of plaintiff Spangenberg and defendant Peoples remain unsatisfied so far as appears from the record.

Spangenberg commenced the present diversity action to recover $12,966.94 the alleged balance due for installation of the gas heating and cooling equipment. The issues raised at trial and on this appeal, involve the nature and extent of Peoples agreement or agreements and whether, on any of several theories, such constitute an obligation to pay for the balance of installation of the heating and cooling equipment.

Plaintiff-appellant Spangenberg's first theory is that it is entitled to recover as a third party creditor beneficiary under a contract between Peoples and Sullivan. In disposing of this theory, the District Court found as a matter of law that under the Peoples-Sullivan agreement Peoples' liability to Sullivan to pay the cost of installation was contingent upon conditions never fulfilled by Sullivan, i. e., the obtaining of the disclaimers from First Federal Savings and Loan Association and others. Presuming that plaintiff is a third-party creditor beneficiary, the trial court correctly held that its rights under the Peoples-Sullivan contract were no greater than those of Sullivan, and that he, Sullivan was precluded by failure of conditions from enforcing the contract. Olney v. Hutt, 251 Iowa 1379, 105 N.W.2d 515 (1960); Coen & Conway v. Scott County Savings Bank, 205 Iowa 483, 218 N.W. 325 (1928); Iowa Home Mutual Cas. Co. v. Farmers Mutual Hail Ins. Co., 247 Iowa 183, 73 N.W.2d 22 (1955).

It is not now suggested that the law of Iowa permits the rights of a third-party beneficiary to rise above those of the original promisee, Sullivan. Rather, plaintiff-appellant contends (1) that the uncontested evidence submitted at the trial below does not support the court's ruling that the Peoples-Sullivan contract was subject to conditions; (2) that the judgment obtained by Peoples against Sullivan on February 23, 1968, affirmatively disposed of the issue as to whether the October 17 agreement is enforceable by Sullivan; and (3) that in any case, the express reference to disclaimers appearing in the October 17 agreement came too late to effect plaintiff-appellant's rights as a third party beneficiary.

We find that these contentions of appellant are without merit.

■ (1) The evidence produced at trial by appellant failed to raise a substantial fact question as to whether a presently enforceable contract existed between Peoples and Sullivan. The agreement of those parties was reduced to written memorandum form on October 17, 1966. Peoples liability is thereby expressly and unambiguously declared to be contingent upon the obtaining of disclaimers by Sullivan. The fact that the testimony showing that the disclaimers were actually refused may have constituted hearsay is of no significance. The burden of proving the substantial fulfillment of conditions precedent to a contract is on the party seeking enforcement. The record does not reveal that any of the disclaimers were ever obtained.

Appellant contends that the extrinsic evidence taken as a whole tends to show that Peoples made an unconditional promise to Sullivan to pay for the installation as of June 8, 1966. This is tantamount to a claim that appellant is the third-party beneficiary of a Peoples-Sullivan contract made June 8, 1966 by which, if nothing later had occurred, Sullivan could at that juncture have sued and recovered from Peoples and that appellant as a third-party beneficiary thus should be able to step into Sullivan's shoes and do the same.[6] We need not decide whether a third-party beneficiary is permitted to dissect the underlying agreement in this manner where the promisee himself could not do so.[7] Even if such were to be permitted, plaintiff's contention is without merit. The June 8th letter contained clear conditions precedent to Peoples liability, which later were defined specifically as the parties obviously had contemplated, in the October 17th letter, and appellant cannot rely on extrinsic or parol evidence to attempt to establish that the June 8th letter was unconditional. If the specific content or substance of the conditions were of import or involved in this litigation, parol evidence could be introduced to show what was contemplated by the "appropriate forms", but to attempt basically to show by extrinsic evidence that the letter was completely unconditional flys in the face of and assaults the very statements in the letter itself and should not be permitted. It is equally clear that in attempting to show an unconditional promise by Peoples to pay for the installation appellant is attempting to contradict the provisions of the writing of October 17.

■ (2) Nor do we feel that the trial court was barred from making an independent determination as to whether the Peoples-Sullivan contract was enforceable by Sullivan. Insofar as appellant seeks to preclude relitigation of issues disposed of in prior court proceedings, it must meet the burden of bringing those issues within the well defined rules of *res judicata* and collateral estoppel. Although the judgment of February 23, 1968 in favor of Peoples and against Sullivan was submitted in evidence, neither appellant's argument, nor the record upon which it is based indicate precisely how these rules are thought to apply. Suffice it to say that the judgment does not on its face reach the question now before us, and this court will not go beyond the document in search of facts or theories to support appellant's contention. Appellant's argument misses its mark. It would seem that if Sullivan had rights under its contract with Peoples, Peoples would not have been able to obtain a judgment. *Ergo*, since Sullivan apparently had no defense to Peoples suit as evidenced on the face of the judgment, he had no contract rights against Peoples and plaintiff, as a claimed third-party beneficiary thus has none. Peoples sued Sullivan on a note for monies advanced for equipment, and the judgment cannot be *res judicata* as to plaintiff's position and rights.

■ (3) We need not here decide whether Iowa has adopted the rule expressed in section 143 of the Restatement which permits a third-party creditor beneficiary of a contract to enforce it according to its original tenor where, subsequent to his substantial reliance thereon, the original promisor and promisee vary or discharge the duties contained in the original agreement. Appellant's attempt to characterize the insertion of an express reference to dis-

---

6. This is not of course the same contention as appellant's two claims discussed later in this opinion that Peoples is estopped and that there was a direct contract between it and Peoples so that appellant is not dependent on rights derivatively inuring to it through Sullivan. On these issues, the trial court correctly permitted extrinsic and parol evidence.

7. It seems clear that as between Sullivan and Peoples the June 8th agreement was superseded and discharged by their later written integration of October 17th and that Sullivan is thereby precluded from proving or recovering on the June 8th agreement.

claimers in the October 17, agreement as a variation or discharge of Peoples' pre-existing duty is wholly without merit. Peoples never undertook to finance, or as plaintiff claims, to pay Sullivan or plaintiff for the cost of installation of the gas equipment without conditions. The preliminary agreement contained in the letter of June 8, 1966, was expressly conditioned upon the parties "executing appropriate forms of agreement embodying specific terms and provisions not contained herein * * *" Appropriate forms of agreement were not executed until the October 17 agreement was drawn up which specified that Peoples' liability was conditioned upon obtaining certain disclaimers. The execution of the October 17, agreement fulfilled a prior condition, and neither varied the original tenor of Peoples' undertaking, nor discharged Peoples from any previously existing duty.

▇ The remaining theories upon which appellant relies are premised upon an alleged unconditional promise running directly from Peoples to appellant to pay the cost of installation. It asserts that this promise is enforceable either (a) on the theory of promissory estoppel, or (b) as part of a contract between Peoples and appellant. The district court denied recovery on both theories after determining that appellant had failed to establish, by a preponderance of the evidence, a clear and definite oral promise by Peoples to pay appellant for the cost of installation.

Appellant apparently concedes that under Iowa law the elements most commonly associated with recovery under the theory of promissory estoppel are: (1) a clear and definite oral promise, (2) reasonable reliance by plaintiff on said promise, and (3) a preponderance of equities in favor of plaintiff. The district court found that there was insufficient proof of each of the three elements to allow appellant to recover. Appellant contends that the findings with respect to each element were clearly erroneous. Since a failure to establish any one of the elements of promissory

estoppel precludes recovery under that theory, we will limit our review principally to the trial court's finding that no clear and definite oral promise had been made by Peoples.

In St. Louis Typographical Union No. 8 v. Herald Company, 402 F.2d 553, 557 (8th Cir. 1968), this court observed that the guidelines resorted to in deciding whether the trial court has clearly erred are as follows:

"1. A finding is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L. Ed. 746 (1948). 'The rule itself applies also to factual inferences from undisputed basic facts, id. [333 U.S. at page 394, 68 S.Ct. 525 at page 541].' Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960).

2. The court of appeals must indulge the presumption that the findings are correct. Friedman v. Fordyce Concrete, Inc., 362 F.2d 386 (8th Cir. 1966); Manning v. Jones, 349 F. 2d 992, 995 (8th Cir. 1965); United States v. Skolness, 279 F.2d 350 (8th Cir. 1960).

3. The complaining party has the burden to clearly demonstrate error in the findings. This is an especially strong burden where the findings are primarily based upon oral testimony and the trial judge has viewed the demeanor and credibility of witnesses. Bryan v. Kershaw, 366 F.2d 497 (5th Cir. 1966), cert. denied, 386 U.S. 959, 87 S.Ct. 1030, 18 L.Ed.2d 108 (1967); Friedman v. Fordyce Concrete, Inc., supra; Murphy v. Shelby, 353 F.2d 418 (8th Cir. 1965); Montgomery Ward & Co. v. Steele, 352 F.2d 822 (8th Cir. 1965).

4. It is not the function of the court of appeals to reevaluate evidence presented in the trial court, and the

reviewing court cannot substitute its judgment for firsthand evaluation. Cataphote Corp. v. DeSoto Chemical Coatings, Inc., 356 F.2d 24 (9th Cir.), cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966); Indemnity Ins. Co. of North America v. Pioneer Valley Savings Bank, 343 F.2d 634 (8th Cir. 1965); Consolidated Sun Ray, Inc. v. Oppenstein, 335 F.2d 801 (8th Cir. 1964); Weiby v. Farmers Mutual Automobile Ins. Co., 273 F.2d 327 (8th Cir. 1960)."

Applying these criteria to the present case we feel justified in rejecting appellant's claim of error. As the District Court recognized, there are certain factors which tend to support appellant's claim that a clear and unconditional promise was made by Peoples to appellant. However, the evidence of such an express promise is inconclusive. In its letter of August 4, 1966, Peoples undertakes only to "finance" the installation in a manner "confirming our previous negotiations". Appellant's contention that the reference to "previous negotiations" refers to a prior unconditional oral promise by Mr. Duane Townsend, conflicts with Mr. Townsend's testimony concerning the representations he made to appellant. No memorandum was made concerning the meetings between appellant and Mr. Townsend, nor is there any written evidence of Mr. Townsend's alleged unconditional promise in response to appellant's request for assurances prior to the August 4 letter. Where, as here, testimonial evidence presents a credibility or demeanor question, the matter is peculiarly within the competence of the trial court.

Appellant also relies on evidence of Peoples' conduct from which, it is said, the District Court should have implied a clear and unconditional promise to pay. It is undisputed that prior to receipt of the August 4 letter, as early as April 1966, appellant was approached by Peoples on the subject of installing a unitary gas system; that in June 1966, drawings relating to the installation of the chiller units were exchanged by the parties, and that Peoples ordered the units in its own name; that in July, appellant supplied Peoples with lists of materials and labor upon the latter's request. It is also undisputed that subsequent to receipt of the August 4 letter, but before the end of the month, Peoples paid for the chiller units, and sent letters to appellant's suppliers requesting their confirmation of appellant's charges in order to "proceed to settle with Mr. Spangenberg"; and that in October, Sullivan in the presence of Peoples' representative, stated without objection, that appellant's name was not included on a list of Sullivan's creditors because Peoples would pay him directly.

As indicated, none of the foregoing discloses an express promise by Peoples to pay without condition. Chronologically, only the events occurring prior to August 4, are probative on the question of what was meant by "previous negotiations" in Peoples' letter of that date. While the evidence produced by Peoples does not unequivocally rebut the inferences sought to be drawn by appellant, this does not mean that the trial court erred in concluding that an inference of a clear and unconditional promise to pay was unwarranted. After examining carefully the record before us on this appeal, we are not left with a definite and firm conviction that a mistake has been made.

■ In addition, on the issue of promissory estoppel, it seems clear that by August 4, 1966, plaintiff Spangenberg's work had been almost entirely completed and to that date to the best of his recollection in his testimony he had not seen nor had he become aware of the letter of June 8, 1966. Further, there is no evidence that certain letters to suppliers on which plaintiff attempts to rely were known to plaintiff prior to such date. These facts warrant the trial court's further finding that plaintiff could not have acted to its detriment in reliance on any agreement between Peoples and Sullivan or on any representations made directly to plaintiff.

Appellant alternatively contends that it is entitled to recover under a theory of contract, express, or implied made directly with Peoples. What has just been said concerning promissory estoppel disposes of this contention. Having failed to prove that Peoples made an unconditional promise to pay plaintiff, its position quite obviously cannot be improved by offering an additional theory upon which such a promise would be enforceable. If it could be found that in April or later in June, 1966 Peoples made an unconditional promise to pay plaintiff directly for its installation, then clearly plaintiff should recover either under the theory of promissory estoppel or for breach of contract. The trial court having found no such promise, however, both theories fall. As the trial court correctly observed, in the absence of proof of such a promise, "[t]he only reasonable conclusion that can be reached from the evidence presented is that there was never a 'meeting of the minds' as to the nature and extent of the financing agreement between plaintiff and Peoples." We do not find any error.

Affirmed.